IDEAL HEATING COMPANY, Appellant, v. I. W. KRAMER, Appellee.

**Heating contract:** WORKMANLIKE MANNER: UTILITY. An agreement to install a steam heating plant in "a good and workmanlike manner" implies not only that the work will be well done but that the plant will operate with reasonable success; and if its successful operation requires a readjustment of the

apparatus, it should be done by the contractor at his own expense.

**Implied warranty.** An express warranty in a contract of sale of 2 personalty will not exclude an implied warranty on another subject concerning which the writing is silent.

**Same.** A provision in a contract for installing a heating plant, that 3 the writing fully expresses the agreement, does not exclude an implied warranty of its usefulness, where one would otherwise exist.

*Appeal from Polk District Court.*—HON. A. H. McVEY, Judge.

WEDNESDAY, MARCH 15, 1905.

ACTION in equity to enforce a mechanic's lien. Decree dismissing the petition, and plaintiff appeals.—*Affirmed.*

*Ryan, Ryan & Ryan,* for appellant.

*J. A. McCall,* for appellee.

WEAVER, J.— The plaintiff company is engaged in the business of plumbing, pipe fitting, and steam heating. In the year 1901 it entered into contracts by which it undertook to do the plumbing and furnish heating apparatus for a certain block or double building owned by the plaintiff for the aggregate price of $1,250. Thereafter the plaintiff further undertook to install certain radiation for steam heating in the defendant's dwelling house, which stood near the block or double building above mentioned, and connect said radiation with the boiler by which said block was heated.. The agreed price of this job was $225. The plaintiff claims to have performed all the work aforesaid according to agreement, and that there is an unpaid balance due him, for which he asks judgment, and the establishment of a lien upon the property. The bill of items attached to the petition indicates that defendant has paid plaintiff $1,250, the agreed

price of the work done in the block first mentioned, leaving unpaid the price named in the last contract, $225, and certain small items charged as extras, amounting to $18.47. Defendant admits making the contracts sued upon, but says he has paid for all the work which has been done according to the agreement. He further alleges that the work done under the last contract for the purpose of heating his dwelling house was executed in such negligent and unworkmanlike manner as to prove wholly inadequate and useless, and is without any value, and for injuries resulting from this failure he makes a counterclaim of $300. The district court found the plaintiff entitled to recover nothing, but allowed it to remove the radiators, pipes, and other materials placed by it upon the premises under the last contract, on condition that it repair the injury occasioned by the installment and removal of said materials. The defendant's counterclaim was dismissed.

The appellant argues that it did not undertake to accomplish any certain or definite results with the apparatus put in the dwelling house, and that, having in fact installed the radiators and pipes called for by the agreement, defendant must be held to pay the contract price. The contract is embraced in certain written proposals accepted by the defendant. The proposals appear to have been written upon a printed form, some parts of which have no apparent meaning in connection with the work actually contemplated. It does, however, specify the radiators and piping to be put in, the connection of the same with the boiler, the quality of the materials to be used, and provides that " all work is to be done in a good and workmanlike manner." No detailed plans or specifications for the work are given. It also provides that upon completion of the work it shall be promptly inspected by the defendant, and accepted or rejected, so that the workmen, while still on the premises, may at once remedy any defects complained of. A guaranty is given that, if any part of the

1. HEATING CONTRACT; workmanlike manner; utility.

apparatus show any defects in material within eight years, new parts will be furnished upon application. The title to the property, with right to remove the same, is reserved by the plaintiff, if not paid for according to contract.

Without at this time considering whether defendant may rely upon any implied stipulation or agreement, we have to say that, in our judgment, the plaintiff, in agreeing to do the work " in a good and workmanlike manner," did undertake to produce definite and certain results. The stipulation means something more than a promise to do a job which shall look well — something more than a good example of pipe fitting. A grist-mill which will not grind, a reaper that will not cut grain, a locomotive that will not move when the proper power is applied, can hardly be said to have been constructed in a good and workmanlike manner. Even so a heating apparatus that will heat nothing but the owner's temper must be said not to fill that condition. If a professional ditcher undertakes to drain a swamp in a good and workmanlike manner, but by a miscalculation makes the outlet of his ditch higher than the surface of the swamp, it will not avail him to say that the trench was evenly dug, and the tile laid with perfect regularity. A good and workmanlike job is one that is done as a skilled workman should do it. *Filzgerald v. La Porte,* 64 Ark. 34 (40 S. W. Rep. 261); *Smith v. Clark,* 58 Mo. 145.

The putting in of a steam heating outfit is a work which requires experience and skill. When such work is well done, we know, as a matter of common knowledge, it serves its purpose with a fair degree of success. It is made evident in this case that the plan adopted for piping and heating the defendant's residence did not operate with reasonable success. For one thing, it is practically conceded that the boiler was set too high to permit a return of the condensed steam, with the result that the pipes and radiators would fill with water and prevent the circulation of steam. Plaintiff sought to remedy this by wasting the condensed steam into

the sewer, but the device did not operate satisfactorily. When the existence of the defect was demonstrated, plaintiff refused to lower the boiler without extra payment, and the defendant, after vainly trying to heat his house therefrom, abandoned the attempt, and put in a furnace, and notified plaintiff to remove the radiators and pipes. If the boiler was too high, plaintiff, as a skilled workman, must have known the fact, and must further have known that a good and workmanlike job for heating the defendant's home therefrom was impracticable. It is testified upon part of the plaintiff's officers that before entering into the contract they expressed to the defendant their doubt of the success of an attempt to heat the house in the manner proposed, and told him he must take the chances, or words to that effect. If this fact were established, it would, of course, relieve the plaintiff from responsibility, for, under such circumstances, it could only be held to make as good a job as could reasonably be expected in view of the faulty plan adopted. But no such stipulation is contained in the written agreement, and the defendant and his wife deny the alleged conversation, and testify unequivocally that the manager assured them it was perfectly practicable to heat their home successfully by connection with the boiler in the other building. The defendant is a photographer, and has no technical knowledge of steam heating; and, assuming that he is a man of average prudence and sense, it would seem improbable that, in face of a warning that his heating apparatus was likely to prove valueless, he would direct or permit the work to proceed. We are inclined to the view that the defendant's theory of the conversation preceding the making of the contract is the more reasonable and the more likely to be correct.

But even if we discard all testimony as to prior conversations, there was still the question of fact whether the job was done in a good and workmanlike manner. In entering into this contract defendant was promising to pay for something more than the installing of so much iron piping

and radiators, and we must assume that plaintiff supposed it was promising to furnish him something more than the mere materials in place. If, as we have before said, the plan of heating was the defendant's, and plaintiff simply undertook to construct it according to his notions, then he would be in no condition to complain if the venture proved an entire failure because of defects in the plan, and he should pay according to contract. But this does not appear to be the case. He employed plaintiff, presumably because of its skill and experience, to put in a system intended to warm his house. There is nothing in the evidence to show that it was impossible to heat the house successfully from the boiler. Possibly and probably this would have required a lowering of the boiler, but plaintiff, having undertaken to put in a system for heating the house from said boiler, must be presumed to have named a price to compensate it for all the work necessary for it to make the connection reasonably efficient for its intended purpose. If that result necessitated the lowering of the boiler, plaintiff should have lowered it. In this connection it should be said that, although the last contract was made after the boiler was set in place, yet when the boiler was originally furnished by plaintiff it was understood between the parties that at a later date defendant might desire to heat his house therefrom, and a boiler larger than was necessary to heat the other building was provided in anticipation of such demand. We must assume, therefore, that when plaintiff furnished and set the boiler it did so with reference to this anticipated use, and, if it failed to set it low enough, the fault was not that of the defendant.

II. Counsel have argued at considerable length the applicability of the law of implied warranty to the case here presented. If we were to hold that the contract is not one

2. IMPLIED WARRANTY.

of sale of personal property, yet, having undertaken to do the work called for by the contract, the appellant was impliedly bound to bring to its performance the skill and care ordinarily exhibited by persons

engaged in that occupation or trade.   But the parties, by the express terms of their contract, agreed to treat the steam heating outfit as personalty, and we see no good reason why the rules of law applicable to such sales may not be insisted upon.   That in executory contracts of sale there is an implied warranty of fitness for the contemplated use, especially where the seller undertakes to manufacture or construct the thing sold, is everywhere admitted.   2 Mechem, Sales, section 1344.   Counsel say that this implication is negatived by the express terms of the writing, but this, we think, is a mistake.   The fact that there be one express warranty or representation in the writing will not exclude an implied warranty upon another matter concerning which the writing is silent.   *Blackmore v. Morse,* 79 Iowa, 282.   This is not inconsistent with the holding in *Bucy v. Pitts,* 89 Iowa, 464, but in harmony with it.

The clause of the contract which provides that the writing, when signed, " shall fully express the agreement between the parties hereto," is nothing more than a paraphrase of the long-settled rule of law that the writing is presumed to contain the entire agreement, and parol evidence is not admissible to vary its express terms. It does not exclude an implied warranty where one would otherwise be found.

3. SAME.

Assuming, as we think we may, that the usual implied warranty or reasonable fitness and adaptation accompanies the contract sued upon, the evidence is overwhelming that the warranty was broken, and that defendant was entitled to rescind and require plaintiff to remove its property.   Such was the conclusion of the trial court, and, in our judgment, it should be *affirmed.*