FOURTH DISTRICT—JUNE, 1913.         431

Lidgerwood Mfg. Co. v. Robinson & Son Cont. Co., 183 Ill. App. 431.

## Lidgerwood Manufacturing Company, Appellee, v. S. R. H. Robinson & Son Contracting Company, Appellant.

1. SALES, § 65*—*contract of sale construed.* Language of a written contract of sale together with evidence of the intention of the parties when made, *held* to show that seller undertook to furnish certain excavating machines and not merely to furnish parts of the machine specified without reference to their fitness or adaptability to the work which they were manufactured to perform, and without reference as to their being capable of being fitted together so as to form a complete machine.

2. SALES, § 326*—*when parol evidence admissible.* In an action to recover for certain excavating machines sold by plaintiff to defendant under a written contract, evidence offered by defendant to show that before the contract was entered into, plaintiff advised defendant of the purpose for which he was purchasing the machines and that plaintiff exhibited photographs showing a completed machine ready for work, *held* improperly refused.

3. SALES, § 326*—*what evidence admissible in action for price.* In an action to recover the purchase price of certain excavating machines, consisting of different parts, refusal of court to admit evidence that the parts would not fit together because of improper construction of some of the parts, that it was necessary to make changes, and that such changes were made with the approval of plaintiff, and that defendant sustained damages by reason of making the changes *held* error.

4. SALES, § 244*—*when express warranty will not exclude an implied warranty.* The fact that a seller expressly warrants a machine to be made of best steel will not exclude an implied warranty that the machine is properly manufactured and will do the work it was designed to do, if such warranty would otherwise be implied.

5. SALES, § 251*—*when a warranty of manufactured goods implied.* Where a manufacturer undertakes to manufacture and supply goods to a customer, there is an implied contract that the goods so manufactured are made in a workmanlike manner and reasonably adapted to the purpose for which made.

6. CONTRACTS, § 183*—*when parol evidence admissible to show intention.* Evidence of the surroundings and circumstances under which a contract was entered into is admissible to determine the design and intention of the parties.

Appeal from the Circuit Court of Madison county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1913. Reversed and remanded. Opinion filed June 10, 1913.

WARNOCK, WILLIAMSON & BURROUGHS, for appellant; EDGAR R. ROMBAUER, of counsel.

TERRY & GUELTIG and BAKER & HOLDER, for appellee; L. W. HOLDER, of counsel.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

By direction of the court the jury returned a verdict for the plaintiff in the amount of $29,864.52, upon which judgment was rendered and the defendant prosecutes this appeal.

On about May 5, 1910, appellant purchased from appellee three Lidgerwood-Crawford Bucket Excavators for which it was to pay a total of $37,500. The appellee was engaged in the business of manufacturing such excavators and had offices in Chicago and New York. On about the day last above mentioned one S. R. H. Robinson, president of appellant, went to Chicago for the purpose of purchasing some excavators and there met the representative of appellee.

The evidence tends to show that the representative of appellee at that time exhibited to Mr. Robinson some machines that were partially completed, of the character that was afterwards sold to appellant, but the machines purchased by appellant were, in the main, yet to be constructed. After looking through the shop and conversing with the representative with reference to this matter the appellee submitted to appellant the following proposition:

"PROPOSAL FROM LIDGERWOOD MANUFACTURING COMPANY.

EXCAVATOR DEPARTMENT.

CHICAGO, ILL., May 25, 1910.

S. R. H. ROBINSON & SON CONTRACTING CO.,
915 Chemical Building,
St. Louis, Missouri.

GENTLEMEN:—We propose to furnish you and deliver f. o. b. cars, Chicago, Illinois, the machinery de-

scribed in specification hereto attached, and made a part of this proposal.

The price of said machinery delivered as above, and subject to conditions hereinafter stated, is twenty thousand dollars ($20,000).

Terms of payment to be as follows: One-half cash and three (3) notes of equal amounts at sixty (60) ninety (90) and one hundred and twenty (120) days for balance, on presentation of bill of lading.

This proposition is for immediate acceptance, but, although accepted, does not constitute a contract until approved by an officer of the Lidgerwood Manufacturing Company, and is subject to change or withdrawal until so approved.

We assume no liability for damages on account of delays, nor can we make an allowance for repairs or alterations, unless same are made with our written consent or approval. In the event of the breakage of any part by reason of a defect in the material existing at the time we furnished it, we will replace same, or repair it, without charge, providing such breakage develops under normal and proper use within thirty days after the starting thereof; but it is agreed that no liability shall attach to us on account of damages or delays caused by such defective material.

It is expressly agreed that there are no promises, agreements or understandings outside of this contract, and that no agent or salesman has any authority to obligate the Lidgerwood Manufacturing Company by any terms, stipulations or conditions not herein expressed.

This contract is contingent upon strikes, fires, accident or other delays unavoidable or beyond our reasonable control.

Respectfully submitted,

Lidgerwood Manufacturing Co.,

Per G. N. Crawford, Mgr. Excavator Dpmt.

Accepted: 5/25, 1910.
S. R. H. Robinson & Son Con. Co.
By S. R. H. Robinson, President.
Approved: May 27th, 1910.
W. L. Pierce, Secy. & Gen. Mgr.''

Specifications attached to above contract and part of plaintiff's Exhibit A:

The specifications referred to in the proposal and made a part of it are twenty-six in number, and, as we read, most of them describe the different parts of the machines, giving the description of the parts, construction, material to be used in each of the different parts, and is headed ''Specifications,'' attached to the above contract and a part of ''Exhibit 'B,' 'Lidgerwood-Crawford Scraper Bucket Excavator. Patented. Specifications—Class 'B' 'F,' '' and then proceeds to give the number of excavators, also general construction of the excavators and the materials to be used in the manufacturing of the same, followed by a description of the different parts composing the machines and in a general way their manner of construction, etc.

The only parts of these specifications which we deem it necessary to quote are as follows: ''Number of excavators—2.''

''Construction—Excavators to be of the revolving derrick type equipped with turntable 16 ft. diameter, revolving on 12  20-inch chilled iron wheels. Turntable to be operated by the Crawford Rack and Pinion Swinging Device.''

''In General—We furnish the machine complete as shown in blueprint submitted, except rails and timbers for constructing the track.''

''Erector—If desired, we will send you a competent man to superintend the erection and starting of excavators. This man to be in your employ and paid by you at the rate of $7.00 per day and his traveling and living expenses from the day of his leaving Chicago until his return. Also all transportation expenses

Lidgerwood Mfg. Co. v. Robinson & Son Cont. Co., 183 Ill. App. 431.

from and back to Chicago on his tools.   Settlement to be made with this man direct by you.''

The contract and specifications for the third excavator and marked as ''Class 'C' '' is substantially the same as the one with reference to the two excavators marked as ''Class 'B,' 'F.' ''

The evidence further shows that appellee furnished the machines in question part from the Chicago factory and part from the New York factory, and that when such parts of the machines as were manufactured at the Chicago factory were completed they were set up by appellee to see that they fitted together and were then knocked down and delivered on board the cars at Chicago and New York and shipped to the appellant at Lakeview.   The machines were received by appellant at Lakeview in Madison county, Illinois, where they were to be used in the construction of a diversion canal for Cahokia creek.   At about that time appellee sent an expert to put the machines together and to start the excavators to work.   Appellant sought to show that when the machinery arrived and the expert undertook to put it together that the parts would not fit one in the other and that they were not able to make the machines work because of the improper construction of some of the parts connected with and forming a part of the different excavators; and to further show that appellant, with the knowledge and approval of appellee, incurred several thousand dollars expense, in addition to the expense that would have been required had the machinery been properly constructed; this the court refused.

Appellant also offered to show that later on and at the time appellee sought to secure a settlement for the machines, that a controversy arose as to appellant's damages growing out of appellee's failure to furnish machinery as provided; that another and a different agreement was then entered into whereby appellant paid to appellee $5,000 in cash and executed and delivered to it the notes offered in evidence for the bal-

436     APPELLATE COURTS OF ILLINOIS.

Lidgerwood Mfg. Co. v. Robinson & Son Cont. Co., 183 Ill. App. 431.

ance of the purchase price, excepting the sum of $12,-500, which was left open pending further negotiations with reference to the matter, and that the said $5,000 payment was made and said notes executed upon the representation and promises of the agents of appellee that it would immediately make such excavators satisfactory to appellant and fit to do the work for which they were purchased. This testimony was also objected to and the objection sustained by the court.

There were several counts in the declaration, some of them upon the notes above specified, and also the common counts. Upon the trial of the case the appellant offered in evidence the notes, as stated by counsel, not for the purpose of recovering upon them, but for the purpose of showing that they had not been in any manner disposed of. After the exclusion of the evidence by the court it then directed the verdict rendered, basing the amount of the judgment upon the original contracts.

Counsel for appellant contends: First, that the said contracts provide for a sale and delivery of three Lidgerwood-Crawford Scraper Bucket excavators, two of class ''B'' ''F'' and one of class ''C,'' or, in other words, such machinery and parts ready to be fitted together which when assembled would make complete excavators and fit for the purpose for which they were manufactured, and that the court erred in holding that the contracts above set forth provided that appellee's undertaking was simply to furnish the particular parts or pieces mentioned in the specifications without reference as to whether or not when fitted together they constituted an excavator, or, in other words, that the appellant purchased the parts and not a machine.

The evidence discloses that appellant was desirous of purchasing an excavator and went to Chicago and called upon appellee for that purpose; that appellee exhibited to him blueprints of the several parts of the machine and also exhibited to him some of the ma-

chines that were partially erected, and that at the conclusion of their examination appellee made the proposition which was offered in evidence and that appellant accepted this proposition.

Appellant offered to show that before it entered into the contract it advised the appellee of the purpose for which it was purchasing these machines, in other words, that it wanted the machines to excavate a diversion canal and that appellant also offered to prove that appellee exhibited to its agents, at the same time, a photograph showing a completed machine ready for work, and it was stated by counsel, at the time that it was offered, not for the purpose of changing the terms of the contract but for the purpose of putting the court in the position occupied by the parties at the time the agreement was entered into; but the court refused this testimony and we think this refusal was error. It did not tend to vary the terms of the contract. There is no doubt about the proposition that parol evidence cannot be offered for the purpose of in any manner changing or varying the terms of a written contract, but as the design and intention of the parties in the making of the contract must be determined we think there is no doubt that the surroundings and circumstances under which the contract was entered into is proper. *Thomas v. Wiggers,* 41 Ill. 470. In the case of *Robinson v. Stow,* 39 Ill. 572, it is said, where the construction of a written contract was before the court that: "The intention of the parties, it is true, must govern; but the experience of human affairs teaches courts that this intention is not to be sought merely in the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties and the objects they evidently had in view. It often happens that a particular clause in an instrument is made to bear a meaning quite inconsistent with the natural import of the terms used by reference to the entire language and general scope of the contract. 'The judges,'

438 · APPELLATE COURTS OF ILLINOIS.

Lidgerwood Mfg. Co. v. Robinson & Son Cont. Co., 183 Ill. App. 431.

says Lord Hale, 'ought to be curious and subtle to invent reasons and means to make acts effectual according to the just intent of the parties; they will not, therefore, cavil about the propriety of words, when the intent of the parties appears, but will rather apply the words to fulfill the intent than destroy the intent by reason of the insufficiency of the words." We are, however, convinced from the reading of the contracts and the testimony of witnesses for appellee that the undertaking of appellee in this case was to furnish machines, when set up and ready for work, that were adapted to the work of excavating the earth. The very first clause of the exhibit containing the specifications is "Lidgerwood-Crawford Scraper Bucket excavator," and referring, as we think, to the machine. The next sentence is, "Number of excavators, two," showing that the appellee, as we think, was undertaking to furnish to appellant two machines or two excavators and not the parts of two excavators. The next clause gives a general statement of the construction of the excavators and is as follows: "Construction—Excavators to be of the revolving derrick type, equipped with turntable 16 ft. in diameter, revolving on 12    20-inch chilled iron wheels. Turntable to be operated by the Crawford Rack and Pinion Swinging Device," which seems to us to be a general description of the machine. Then follows the material for constructing and description of the engine and other parts, but these we understand to be in the nature of specifications of the different parts which, when put together, constitute the whole or a complete machine. In one of the specifications we find the following language: "In General —We furnish the machine complete as shown in blueprint submitted, except rails and timbers for constructing the track." This certainly does not mean that they furnish simply the different parts as shown by the blueprints, but it certainly means that the machine is to be furnished as a complete machine. In the next item it says: "Erector—If desired, we will

send you a competent man to superintend the erection
and starting of excavators,'' which certainly shows
that they had in their mind at that time that whatever
appellant was purchasing was to be a machine capable
of starting in the work of excavation.    Besides the
price was not fixed to the several parts of the ma-
chine, but it was fixed for the whole; and to say that
appellee would be permitted to comply with his con-
tract, where the evident purpose was to purchase an
excavator, by furnishing parts of the machine speci-
fied without reference to their fitness or adaptability
to the work which they were manufactured to per-
form, and without reference as to their being capable
of being fitted together so as to form a complete ma-
chine, would, in our judgment, be monstrous and
would work a great hardship and would enable peo-
ple engaged in the manufacture of machines, by sim-
ply specifying the parts, to impose upon a public un-
acquainted with the several parts of a machine but
who knew of it only as it was adapted, when taken as
a whole, to the work it performed.    We think the court
erred in giving the construction to this contract that
it did.

It follows from what we have above stated that the
court also erred in not permitting appellant to show
that the machinery furnished could not be fitted to-
gether and that it was necessary to make changes in
such machinery, that such changes were made with the
approval of appellee and to show such damages as ap-
pellant had sustained by reason of making the re-
quired changes as appellee approved.

It is again contended by appellant that notwith-
standing the language used in this contract there was
an implied warranty that the machines were reason-
ably adapted to the purposes for which they were
manufactured.    It is true, as contended by counsel for
appellee, that no implied warranty could be read into
this contract or taken in connection with it that would
contradict or vary the expressed terms and conditions

440     APPELLATE COURTS OF ILLINOIS.

Lidgerwood Mfg. Co. v. Robinson & Son Cont. Co., 183 Ill. App. 431.

of the contract, but we are unable to see that there is anything in this contract that would prevent an implied warranty to the effect that the machinery furnished was manufactured in a workmanlike manner and that the machine was reasonably adapted to the purpose for which it was manufactured; and we believe that this is permissible. The rule laid down by the authorities seems to be that where a manufacturer undertakes to manufacture and supply goods to a customer that there is an implied contract, at least that the goods so manufactured are made in a workmanlike manner and reasonably adapted to the purpose for which made. Benjamin on Sales, vol. 2, pp. 843-865. Cyc. vol. 35, p. 401.

In speaking of an implied warranty that had been read into the written contract, the Appellate Court of the Second District in the case of *Graham v. Eiszner,* 28 Ill. App. 275, says: "While appellant was not permitted to add an express warranty to the written contract by parol, she had the full benefit of an implied warranty. Whether the cooperage was as good as the implied warranty was the real question in the case. The implied warranty required the barrels to be reasonably fit and proper to hold sour mash whisky." We think the correct rule upon this question is stated by Williston on Sales, 322: "If expressed warranties in a contract are in their nature inconsistent with the warranties which would have been implied had none been expressed, it would indeed be violating the intention of the parties to imply warranties but the principle should extend no further. An expressed warranty is generally executed for the protection of the buyer not to limit the liability of the seller. The fact that the seller expressly warrants a machine to be made of the best steel ought not exclude an implied warranty that the machine is properly manufactured and will do the work such machines are designed to do, if such warranties would otherwise be implied. Excellent authorities support this view. Though a con-

tract is in writing and no warranty expressed, one may be implied; for the implied warranty is not based on a supposed agreement of the parties but is an obligation imposed by law.'' And this seems to be in harmony with the decisions of our own courts, so far as we have been able to find this question passed upon. And this doctrine seems to have been sustained in the case of *Elgin Jewelry Co. v. Estes & Dozier,* 122 Ga. 807; *Ideal Heating Co. v. Kramer,* 127 Iowa 137, and many other cases to which we have been referred, and some of which we have examined. It is said, however, by counsel for appellee that this doctrine is squarely in conflict with the principle laid down in the case of *Fuchs & Lang Mfg. Co. v. Kittredge & Co.,* 242 Ill. 97, in which they say: ''Where a known, described and definite article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known, described and definite article be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. In the contract for the sale of an article under its patent or other trade name there is an undertaking that the article delivered shall be of the kind ordered but not that it shall be fit for any particular purpose. If the buyer gets what he bargained for, there is no implied warranty though it does not answer his purpose.'' We do not believe that this opinion is in conflict with the case referred to. There the article was ordered and supplied according to the order but here it was not, and that is the very question under consideration, was the article supplied as ordered? It is contended upon the one hand that the article ordered was parts of a machine, upon the other that an excavator was ordered, and under our view as heretofore expressed appellee was bound to furnish the machine as ordered, which the evidence proffered by appellant shows it did not do.

Again it is claimed by counsel for appellant that after this indebtedness became due, according to the terms of the original contract, and appellee sought a

settlement, that a new contract was entered into by which appellant agreed' for a consideration to complete the machine and make it perform the work for which it was intended and purchased. It appears to us that appellant, whatever his rights were, was in good faith, contending that the machine purchased by it had not been furnished according to contract and that appellant had been damaged. If such a condition existed then the parties had a right to settle this controversy, readjust their rights, in consideration that appellee would make the machines satisfactory and fit to do the work for which they were purchased and pay the expenses incurred. If the appellant paid the $5,000 sought to be shown, and executed the notes in question, and further obligated itself to pay other moneys, then it seems to us that appellant should have had the right to have shown this fact and that the Court erred in refusing to permit appellant to show a new agreement entered into in settlement of this controversy.

We are of the opinion that the court erred in directing a verdict for the plaintiff and in the several holdings above referred to, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*