Lebow and Shell Corporation, Appellant, v. Albin
Medella, Appellee.

Gen. No. 40,041.

McSurely, P. J., dissenting.

Opinion filed October 10, 1938. Rehearing denied October 24, 1938.

Victor Scott, of Chicago, for appellant.

Julius L. Kabaker, of Chicago, for appellee.

Mr. Justice O'Connor delivered the opinion of the court.

Plaintiff brought an action against defendant to recover the balance of $758 plus $75.80 attorney's fees it claimed to be due on the purchase price of secondhand fixtures sold and installed by plaintiff for the use of defendant's tenant in running a butcher shop. Defendant denied liability on the ground that the fixtures, as partially installed, could not be used; that defendant requested plaintiff to remove them, and upon its failure to do so defendant had them removed and stored in a warehouse for plaintiff. Defendant also claimed damages and the return of $200 he had paid on account. There was a jury trial finding the issues for defendant, assessing his damages at $200, and plaintiff appeals.

The record discloses that plaintiff was engaged in selling and installing secondhand fixtures for use in butcher shops; whether it also sold new fixtures does not clearly appear. A few days before February 2, 1937, defendant called at plaintiff's place of business to purchase fixtures to be installed in a building belonging to defendant which he had rented to Frank Burch and wife to be used by them as a butcher shop. The evidence shows that two of plaintiff's representatives with defendant and his tenant Burch selected each of the fixtures required by defendant. The fixtures were secondhand and were in plaintiff's place of

business at 1141 West Madison street, Chicago. The fixtures selected were, ''1 used cereal counter and platters 1 dozen, 1 used 12x9 cooler & partition . . . 2 used counters . . . 1 used White porcelain ice machine in running condition to maintain cold temperature (Baker); 2 used scales (Dayton); 1 used combination meat chopper and coffee mill—Steiner; 1 used Slicer—Globe—1 used Cash Register—National —Ticket M; 1 used stuffer and 2 used Blocks in good condition.''

Two witnesses for plaintiff testified that as each fixture was selected and agreed upon the price was given to defendant, and that afterward an itemization of the several articles with the prices, was given to defendant. The items totalled $1,170 and $113 for interest for 24 months, totalling $1,283; $200 was paid in cash and the balance, $1,083, payable in 24 consecutive instalments.

Defendant testified that he and his tenant Burch, together with two of plaintiff's representatives, selected the several fixtures but that he was not given the cost of each, only the total. Burch was not called. February 2, 1937, a day or two after the articles were selected, a representative of plaintiff called on defendant at his place of business and a written document, designated as a contract by plaintiff, for the sale of the items was signed by both parties. It was agreed that the fixtures were not to be installed until about a month afterward, and this was done. Apparently plaintiff installed the fixtures by one of its contractors, although this does not clearly appear from the evidence. The ice machine, the price of which was $200, was not satisfactory. Plaintiff removed the machine and afterward supplied another, and the evidence is to the effect that the latter was not connected up, so that it could be used, because defendant thought he would purchase a new ice machine. Plaintiff then took

this second machine away, and apparently the parties never reached an agreement as to the purchase and installation of a new machine. About two months thereafter, May 24, 1937, defendant wrote plaintiff a letter, which is in evidence, saying that he had written a letter to plaintiff April 26, canceling the contract and that he had then demanded the removal of the fixtures; that unless this was done defendant would remove the fixtures at plaintiff's expense, etc. Defendant's evidence is further to the effect that his tenant, Burch, paid rent for February and March and refused to pay further because the fixtures were not completely installed and therefore could not be used, and he vacated the premises about June 19; he lived in the rear of the shop. In June defendant found a new tenant who wanted to use the place for a butcher shop but who had his own fixtures, and defendant was obliged to remove the fixtures in question so the new tenant could install his own. June 19 defendant removed the fixtures and had them stored with the Mozart Motor Service and afterward sent plaintiff the storage company's receipt.

There is other evidence in the record to the effect that plaintiff did not obtain a permit before the fixtures were installed, nor were they inspected after installation by the proper city official as required by the city ordinance. There is some testimony on behalf of plaintiff to the effect that the contractor who installed the fixtures was to see that the proper permits were obtained and the inspection made, but the contractor was not called. Apparently he was employed by plaintiff. What the contractor did, if anything, does not appear. Since there must be a new trial, this evidence can then be adduced. There is other evidence in the record that the ice machine was condemned by a city inspector. All of this can be gone into on a retrial of the case.

Counsel for plaintiff says that since the fixtures in question were secondhand and selected by the buyer, and since there was no claim of fraud on the part of the seller, the doctrine that the buyer beware applies; that the written contract negatived any expressed or implied warranty because it was expressly agreed in the contract that "all previous communications between the parties hereto, either verbal or written, relating to the subject matter of this order are hereby abrogated, and this order when in fact accepted by you as above provided shall constitute the sole agreement between the parties," and further the parties "expressly waive any and all implied warranties except that the vendor has a valid title and full right to sell."

We think it clear that the written document designated a contract was not considered by either side as embracing all the terms of the transaction. It contains no provision about the installation of the fixtures that we have been able to find and none has been pointed out, and yet the evidence shows plaintiff assumed the obligation of installing the fixtures and we think it obvious it was the understanding of plaintiff that the fixtures when installed would be reasonably fit for the purpose for which they were purchased by defendant. And the evidence all shows that plaintiff intended this to be the fact. Every word of plaintiff's evidence is to the effect that it was obligated to see that the fixtures when installed would be usable. In fact Mr. Shell, who was plaintiff's principal representative in the matter, on April 15, 1937, wrote defendant, "We guarantee the ice machine to give you satisfaction. In the event the machine does not operate satisfactorily, we will allow you a full credit of $325.00 in exchange of a new machine or otherwise."

Counsel for defendant, in reply to plaintiff's proposition, in his brief says "The sale was not second hand goods selected by the buyer but goods that were not

yet manufactured and purchased by sample and with the understanding that they were to be used for the meat market.'' This statement of counsel is, to say the least, surprising in view of the facts in the record. Defendant testified he selected the various fixtures at plaintiff's place of business and all the evidence shows that they were secondhand. In fact this was admitted by counsel for defendant. When counsel for plaintiff was cross-examining defendant, counsel said, ''You bought secondhand fixtures.'' Mr. Kabaker (defendant's counsel) ''There is no question about it.'' The goods were secondhand; they were not sold by sample and all the evidence shows they were selected at the time defendant was at plaintiff's place of business on West Madison street.

Counsel for defendant also contend that the purported contract was a nullity because plaintiff violated a city ordinance and ''is unenforceable because of its lack of mutuality.'' We have heretofore discussed the claimed violation of the city ordinance. Plaintiff's counsel says the purported contract states, ''Please ship to Albin Medella as soon as convenient: In consideration whereof, I, or we, agree to pay:'' etc., but that there is ''no agreement on the part of the seller to do anything, not even to sell nor even to deliver.'' There is no merit in this contention. The articles were delivered and installed, and, moreover, it was clearly the intention of both parties that this should be done. A contract includes not only what the parties said, but also what is necessarily to be implied from what they said. *Thebest Laundry Co. v. Duffy,* 293 Ill. App. 252; *Grossman v. Schenker,* 206 N. Y. 466; *Craig v. Pellett,* 209 Ill. App. 368 (Abst.); *Lidgerwood Mfg. Co. v. Robinson & Son Const. Co.,* 183 Ill. App. 431; *Ideal Heating Co. v. Kramer,* 127 Iowa 137.

Plaintiff contends that the court erred in refusing to give three instructions submitted by it. These three

are the only ones we are referred to, and obviously all the instructions must be before us before we can say whether the jury has been properly or improperly instructed.

For the reasons stated, and for the further reason that we think the finding of the jury is against the manifest weight of the evidence, the judgment of the municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

MATCHETT, J., concurs.

McSURELY, P. J., dissents.