HANSON SILO COMPANY, a copartnership, appellant, v. RALPH S. BENNETT, appellee.

No. 50790.

(Reported in 119 N.W.2d 764)

FEBRUARY 12, 1963.

Thomas L. McCullough, of Sac City, for appellant.

Charles L. Johnston, of Centerville, for appellee.

THORNTON, J.—Plaintiff, a copartnership, seeks to foreclose a mechanic's lien for the balance due on a contract with defendant to erect a silo. Plaintiff and defendant entered into a contract on March 26, 1956, wherein plaintiff agreed to erect a silo on defendant's farm in Appanoose County for the sum of $3120, $1000 thereof payable June 1, 1956, the balance on terms. The parties orally agreed the balance was to be paid $1000 in the fall of 1957 and the balance of $1120 in the fall of 1958. The contract provided plaintiff was to furnish competent foreman and workmen, and to build the silo "in a good and workmanship manner." The contract also provided, "The title of goods ordered herein, and the right to reclaim possession thereof for balance of purchase price due, shall remain in the company until paid for in money."

Defendant urged defensively plaintiff failed to furnish a competent foreman and workmen and failed to build the silo in a workmanlike manner, that the silo was improperly and defectively constructed, that it leaked, caused the spoilage of silage. In his counterclaim in two counts defendant asked for the recovery of the $2000 paid on the contract and $1500 for the loss of silage spoiled. One count was based on rescission of the contract by the defendant because of plaintiff's failure to furnish competent foreman and workmen and failure to construct the silo in good workmanlike manner, the other count was based on rescission by defendant because of breach of an implied warranty that the silo as constructed was fit for the purpose for which it was intended in that it leaked and caused the spoilage of a large amount of silage.

The trial court found the silo was not constructed in a good workmanlike manner, there was an implied warranty of fitness and the silo did not meet such purpose, and that defendant elected to rescind the contract and so notified plaintiff. It held the evidence as to loss of silage was too vague to determine the value thereof and denied such claim. Judgment was awarded defendant for the recovery of $2000 paid on the contract.

Plaintiff appeals contending there is no implied warranty, that there is no breach thereof; that there was no breach of contract and the silo was constructed in a good workmanlike manner; the delay of two years in attempting to rescind the contract is unreasonable as a matter of law and plaintiff cannot be placed in status quo.

I. The parties agree that drains were not placed in the silo and that there was seepage and leakage in the silo. They disagree as to the cause of the leakage and the necessity for drains, as well as whether or not defendant requested drains. It is clear from plaintiff's evidence a silo strong enough to hold grass silage was intended. From the reference in the contract and the claims made here the parties have treated the silo as personal property. Ideal Heating Co. v. Kramer, 127 Iowa 137, 143, 102 N.W. 840, and Robb v. Booms, 337 Mich. 583, 60 N.W.2d 469, 472.

The first question to be determined is the timeliness of defendant's oral rescission of the contract. The silo was started in May of 1956. One set of workmen put in the foundation, another built the silo. At the time the men were building the foundation defendant says he asked the workmen to put in drainpipes, he showed them where he wanted them. When the foundation was completed he inquired about the drains and was told they forgot to put them in. The silo was completed sometime in June 1956 and defendant made the first payment on June 19, 1956. He did not at that time complain about the lack of drains. Mr. Virgil Hare, the salesman for plaintiff who sold the silo to defendant, was there part of the time during the building of the silo, he came back on June 19, 1956, and defendant made the first payment of $1000 to him. Defendant does not testify that he complained then about the lack of drains. Defendant, a farmer 63 years of age, testified in part on cross-examination, "* * * I bought the farms in 1951 and I knew about the type of soil that was here when I bought them. I knew about the drainage problems."

Defendant's evidence does not show he made any complaint about the lack of drains or that the silage was spoiled due to seepage and the air coming into the silo as a result until the

salesman, Mr. Hare, called on him in August of 1958 requesting the last payment. At that time, and it is undenied, he did tell the salesman he was not going to make the last payment until the damage, the faults, were remedied; that he wanted his money back, if they were not going to do anything to come and get it and give him his money back. This, of course, was not done. Between the time defendant made the first payment and the request for the last, two years later, defendant did order another silo from plaintiff in August 1956. This silo was not delivered because plaintiff did not wish to carry defendant for two silos. On September 9, 1957, defendant paid the second payment of $1000. He further testifies that when he ordered the other silo the silo was half filled with green oat silage and in September of 1956 he filled it to the top with corn and sorgo silage. He says,

" * * * After I had it full, it began to leak. Water began pouring out of it like rain. * * * There was leakage within ten foot of the top of the silo all around it clear down to the foundation. It was just like it was raining, you could take any kind of a can and take it out and catch a can of water, * * *."

Defendant fed 252 head of cattle from the silo the winter of 1956-1957. He quit feeding in April 1957 when the cattle were placed on pasture. The silo was still about half full. In the fall of 1957, after making the second payment, he again filled the silo with corn and orange cane silage. He testified,

"In the fall of '57 when I filled it, it began to leak just as bad as it did before, after we got the pressure. It takes about a week or ten days for fermentation. I ground the stuff up with an ensilage cutter. It ground the stuff up just like mush, it was too wet. * * *."

Defendant further testified he fed the silage from December 1957 to March of 1958 and had to quit feeding it because it was spoiled. He hauled 50 to 75 loads of spoiled silage out of the silo leaving the silo about one-third full.

We believe the attempted oral rescission in this case was not timely as a matter of law. It came two years after defendant knew drains were not placed in the foundation. He was asked,

"Q. What do you claim, Mr. Bennett, is wrong with this silo at this present time? A. The lack of drainage to let this

water, this moisture when it is packed in this silo go down through the silage and drain out."

If the lack of drains was the cause of the seepage and leakage as testified to by defendant, he knew that in the fall of 1956. Defendant in his testimony at times makes himself an expert and at others disclaims all knowledge. We think the record is such that his knowledge of the claimed defect was complete in the fall of 1956.

Any other interpretation of the facts bearing on the rescission would allow a buyer of personal property to wait until a demand for the last payment was made before he would be required to rescind. Section 554.70(3), Code of Iowa, 1962, provides in part, " * * * the buyer, he cannot rescind the sale * * * if he fails to notify the seller within a reasonable time of the election to rescind, * * *."

At this point defendant contends he was not aware of the seriousness of the defect and the consequent spoilage of the silage until December 1957, or a period of eight or nine months until the time of rescission. He states in argument that it was apparent he was waiting during this period for plaintiff to do something about the silo. The record does not bear him out. Plaintiff knew the silo was leaking, one of the partners and the salesman so testified. There is no showing they knew the extent of the claimed defect or that defendant ever requested plaintiff to do anything about the leakage. The testimony of the partner and salesman is that they knew of the leakage and told defendant he would have similar trouble as long as the silage was put in with too high a moisture content, and that defendant did not deny he put the ensilage up when it was too wet. The discussion in United States Hoffman Machinery Corp. v. Carlson, 253 Iowa 304, 310, 111 N.W.2d 271, 273, 274, supports our holding the rescission was not within a reasonable time. The quotation from Chariton Plumbing & Heating Co. v. Lester, 202 Iowa 475, 476–478, 210 N.W. 584, 584, 585, in the Carlson case is particularly applicable here. In Test v. Heaberlin, 254 Iowa 521, 118 N.W.2d 73, 75, we point out that the right to avoid a contract is lost if after acquiring knowledge of the breach the injured party manifests an intention to affirm it or exercises dominion over the

thing to be restored. The injured party must act promptly or within a reasonable time.

We have examined the authorities cited by defendant on this point and do not find them in disagreement with our holding here.

In McNair v. Sockriter, 199 Iowa 1176, 1182, 201 N.W. 102, 105, dealing with real estate, we find:

"But they are asking the equitable relief of rescission against an executed contract, which all authorities, we think, agree they must seek within a reasonable time after discovering the facts."

A delay may be explained. Strothers v. Leigh, 151 Iowa 214, 220, 130 N.W. 1019. In Rohr v. Shaffer, 178 Iowa 943, 954, 160 N.W. 279, though three years elapsed from the time of the contract, the plaintiff did rescind the contract immediately upon making a personal trip to the land in Canada.

In 12 Am. Jur., Contracts, section 447, page 1029, the rule is stated thus:

"The general rule is that the right to rescind must be exercised within a reasonable time, although there is authority to the effect that the mere question of how much time a party to a contract has permitted to elapse is not necessarily determinative of the right to rescind, the important consideration being whether the period has been long enough to result in prejudice to the other party."

In Test v. Heaberlin, 254 Iowa 521, 118 N.W.2d 73, 75, and United States Hoffman Machinery Corp. v. Carlson, 253 Iowa 304, 111 N.W.2d 271, and the cases therein cited, we followed the general rule.

II. It follows from the foregoing defendant is not entitled to recover on his counterclaim. He has accepted the silo. Plaintiff is entitled to recover on its petition. There is only the question of whether defendant agreed to pay interest on the installments. Because of the view the trial court took of the case it was not necessary to pass on the question of interest. As this has not been done, this case is reversed and remanded for the trial court to determine the question of whether or not interest was to be paid on the installments, the rate and time from which

934

interest should run, and for a decree in conformity herewith.—Reversed and remanded.

GARFIELD, C. J., and HAYS, THOMPSON, PETERSON, SNELL and MOORE, JJ., concur.

LARSON and STUART, JJ., dissent.

LARSON, J. (dissenting)—I would affirm, for I find no satisfactory evidence of unreasonable delay in defendant's act of rescission and no showing of prejudice to plaintiff due to that delay.

STUART, J., joins in this dissent.