REFRIGERATION DISCOUNT CORPORATION, APPELLEE, V. HENRY G. RICHARDS, APPELLANT.

284 N. W. 343

FILED MARCH 3, 1939. No. 30504.

*Dryden, Dryden & Jensen,* for appellant.

*M. H. Worlock, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

This is an action in replevin. At the close of all the testimony the court directed a verdict in favor of the plaintiff, and entered judgment "That the plaintiff's title and right of ownership and right of possession of the two refrigerators replevined in this action, at the time the same were replevined, was in the plaintiff and the same is hereby confirmed and that plaintiff have and it is hereby given judgment against the defendant and its damages for the illegal detention of property in the sum of one cent." From the verdict and judgment of the court, defendant appeals.

The petition is regular in form and the answer a general denial. The defendant, an ice cream manufacturer, relying absolutely upon certain advertisements, containing the specifications of "Kelvinator-Nash Ice Cream Cabinets," appearing in a magazine known as "Ice Cream Field," purchased three Kelvinator cabinets. Two of the cabinets are involved in this action, one having been returned by the defendant to the Kelvinator company. The two Kelvinator cabinets were purchased under written contract, specifying the amounts, the down-payments and the amounts to be paid in instalments. The 2-hole portable cabinet was purchased under contract dated June 19, 1931, and the 3-hole portable cabinet under contract dated July 2, 1931.

The defendant testified that the cabinets leaked gas, causing the melting of the ice cream contained therein, and that he was required to replace the product, to his damage; that he had expended for servicing the three machines the amount of $75, and on the two involved in this action $35; that he was unable to obtain service for the cabinets and had to rely upon a Frigidaire service man; that agents of the Kelvinator company called on him to collect and promised to "get the machines going," claiming he needed certain parts for them, and the agents did send him a couple of gauges, for which he paid, but did not service the machines

as promised. Most of the testimony of defendant was excluded on the theory that the contracts of purchase contained the entire agreement between the parties.

Section 69-415, Comp. St. 1929, a part of the Uniform Sales Act passed in 1921, is cited, the defendant contending that the court decided the case under subdivision 4 of said section which reads: "In the case of a contract to sell or a sale of a specified article under its patent or other trade-name, there is no implied warranty as to its fitness for any particular purpose;" further contending that subdivision 1 of said section of the statute is the one applicable to the facts in the case at bar, which subdivision reads: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose;" and that the greater weight of authority is that where goods are sold under a patent or trade-name for a specific purpose they come under the section with reference to merchantability; that is, subdivision 1 of section 69-415, Comp. St. 1929.

In the instant case, the defendant had the use of the two refrigerators through the summer of 1931. In the record is a letter from him to the plaintiff, dated January 22, 1932, which is an explanation of his reasons for not keeping up the payments on the cabinets. On June 20, 1932, practically a year after having contracted for one of the cabinets, the defendant, by letter to plaintiff, wrote about his inability to procure the money with which to make the payments, and complained of the servicing of the cabinets, of the leaking of gas, and stating that the cabinets were of no use to him when there was no one to service them; and on July 29, 1932, he again, by letter, complained of the leaking of gas in the cabinets and stated that he would ship back one of the cabinets and wanted credit on two cabinets for the return of one.

The plaintiff on June 23, 1932, responded to defendant's letter of June 20, 1932, stating that the conditional sales contract was binding upon the defendant for the payment of the items, but that plaintiff was "not disposed to take an unnecessarily arbitrary position in the matter," and asked cooperation on the part of the defendant to the extent of turning over to the railroad the cabinets, consigned to the Kelvinator Sales Corporation, and to ship them direct, freight collect, and that it would accept the cabinets in full settlement of the balance due on the three contracts, offering to return the canceled contracts upon receipt of the cabinets. On July 5, 1932, plaintiff wrote defendant, calling his attention to its letter of June 23, 1932, and asking him to advise the company if he had sent the cabinets; that, if they had been shipped, to send the bill of lading; if not, to send the cabinets at once; that it could not continue to hold the offer open if the cabinets were kept over the present season, and asking that the company be advised by telegram of the status of the matter. The two cabinets were not sent, but were retained by the defendant.

To clarify defendant's position, we quote the following from his brief: "If, because of the plan of construction or the character of materials used, the article will not accomplish that for which it purports to be designed, there is a breach of the implied warranty of merchantability, as well as the implied warranty of general fitness, and in this respect it is immaterial that the machine was sold under a patent or trade-name, or as a specific standard article;" citing annotations, 59 A. L. R. 1224, and 90 A. L. R. 422; *West Michigan Furniture Co. v. Diamond Glue Co.,* 127 Mich. 651, 87 N. W. 92; *Parsons Band Cutter & Self Feeder Co. v. Mallinger,* 122 Ia. 703, 98 N. W. 580; *Ideal Heating Co. v. Kramer,* 127 Ia. 137, 102 N. W. 840.

The view has been taken that the law implies a warranty in a contract for the sale of patented machines that they are reasonably adapted to the purpose for which they are made. There is an implied warranty that the machine, when manufactured, will not be unfit for its purpose on account

of defects in workmanship or the materials used by the manufacturer. 24 R. C. L. 202, sec. 475; *Nettograph Machine Co. v. Brown*, 28 Okla. 436, 114 Pac. 1102, 34 L. R. A. n. s. 737; *Rodgers v. Niles*, 11 Ohio St. 48, 78 Am. Dec. 290.

No representation was made by the defendant to any agent of the company as to the use to which the machines were to be put, and the specifications appearing in the magazine, upon which plaintiff relied when purchasing, contained no warranty, but advertised the efficiency and economy of the machine over other types of refrigeration. This is the only evidence on this proposition.

"In case of the sale of machinery as an ordinary article of commerce, whether the seller is the maker or manufacturer or not, there is, according to the better view, no implied warranty that the machine will do work for which it is ostensibly intended in any particular manner. * * * It has also been held that under a written contract to place a patent system of refrigeration in a refrigerator to be sold and furnished to the buyer, with nothing in the contract beyond the name of the system to show that it was anything in the nature of a refrigerating process, or that it was designed or intended to preserve meats, or that the buyer had anything to do with meats, no implied warranty exists that the system will preserve meats for any particular length of time, nor can such a warranty be shown by parol evidence." 24 R. C. L. 202, sec. 475. See *McCray Refrigerator & Cold Storage Co. v. Woods & Zent*, 99 Mich. 269, 58 N. W. 320; *Seitz v. Brewers' Refrigerating Machine Co.*, 141 U. S. 510, 12 Sup. Ct. Rep. 46. In the instant case, the contract expressed no warranty of any kind or nature, but specifically provided that it contained all the agreements existing between the parties.

Assuming defendant's contention to be the rule, the evidence shows that the cabinets were reasonably fit for the general purpose for which they were manufactured, and fails to show that the defendant relied upon an implied warranty, as contended by him. The machines did refrigerate; that was their purpose. The servicing was the de-

fendant's principal objection. As previously stated, he retained the cabinets, paid instalments thereon up to May 4, 1932, and used the cabinets for some period of time, and not until a year later did he make objection. The correspondence between the parties indicates more or less of a controversy relative to the payments made or to be made. An analysis of the defendant's evidence, if admitted, fails to show a reliance upon an implied warranty, if it did exist, as contended by him.

Defendant offered evidence to show the return of the one cabinet and that he asked any amounts accruing to him therefrom be applied to. the credit of the two remaining cabinets, citing authority holding that a defendant in a replevin action may, under general denial, prove any act which amounts to a defense. *Securities Investment Corporation v. Krejci*, 132 Neb. 146, 271 N. W. 287. In that case, this court held:

"In a replevin action to foreclose a mortgage on chattels, the defendant under a general denial may prove damages resulting from a breach of warranty in the sale thereof, as an offset to show that plaintiff at the commencement of the action was indebted to her in an amount at least equal to the amount due on the note."

In the instant case, defendant had made payments amounting to $88.83 on the cabinets which he returned to the plaintiff in August, 1932. No further payments were made on the remaining cabinets in his possession. No complaint was made about these two machines, which were subsequently taken in replevin, April 20, 1933. Under the terms of the contract, plaintiff was entitled to interest, and if the defendant had received credit for the payments he had made on the returned cabinet, he would be in default on the two remaining cabinets at the time they were taken in replevin, and upon which there was due at that time the sum of $198.34. Defendant's requested credit on the cabinet returned would have been $88.83, leaving a balance still due of $109.51. Obviously, this evidence would not show that the plaintiff was indebted to the defendant at

the commencement of the action in an amount equal at least to the amount due on the two machines taken in replevin, which is the rule announced in *Securities Investment Corporation v. Krejci, supra.*

For the reasons given in this opinion, we hold that the trial court properly directed a verdict for the plaintiff.

AFFIRMED.