## NATIONAL TRAILER SALES COMPANY *v.* PATE ET UX.

[No. 152, October Term, 1956.]

*Decided April 10, 1957.*

Submitted on brief of appellant to BRUNE, C. J., COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*W. ·Carroll Beatty* and *David A. McNamee,* on brief for appellant.

No brief and no appearance for appellees.

PRESCOTT, J., delivered the opinion of the Court.

The appellees, Emmett M. Pate and Evelyn Pauline Pate, his wife, purchased a new house trailer from the appellant, National Trailer Sales, on June 2, 1953, under a conditional sales contract. Mr. Pate testified that he and his family had lived in trailers for a little over four years, and that he had traded in an old trailer to buy the Landola. Although there appears to be some dispute as to the exact number and dates of various complaints, it seems fairly certain that appellees complained to appellant's employees about a leak in the trailer roof within the first six months after they accepted delivery. In response to these complaints the appellant's employee went out and painted the trailer's roof. When this failed to remedy the leak the appellant notified the trailer manufacturer, the Landola· Co. of Converse, Indiana, which in turn had a factory representative make two service calls. On the first of the two calls, the factory representative installed additional screws. and puttied. up the area of the leak in back of the trailer. The second call was apparently made at the factory's request, and also failed to prevent further leaks. Before the second visit from the factory representative appellant again painted the trailer roof and when the roof still leaked the Landola factory was again notified. On his second visit the Landola representative effected major repairs, replacing all of the inner paneling in the back of the trailer, and no fur-

ther trouble was noticed by Mr. Pate until approximately October of 1954, at which time he negotiated with appellant to trade in his old trailer for a two-bedroom model. When these negotiations were unsuccessful Mr. Pate again reported the leaks and appellant's manager again notified the factory. Without waiting for a reply from the factory, appellant arranged with one Walter C. Leuschner of Walters Trailer Repairs of Alexandria, Virginia, to put the trailer in first class condition. A substitute trailer was furnished to the appellees in the meantime and the Walters Company made extensive repairs to the trailer in question, Mr. Pate actually being present while some of the work was in progress. When the work was complete, Mr. Pate called appellant's secretary and indicated he wanted his old trailer returned. This return was accomplished by one of appellant's employees and Mr. Pate himself helped block up and otherwise ready the old trailer for his own occupancy. All the expenses of the repairs, the cost of the substitute trailer which appellees occupied while their own was being repaired, and the expense of moving both trailers was borne by appellant. Sometime later, Mr. Pate informed appellant's manager that he "didn't like the repair job", and on April 12, 1956, appellees filed suit for damages in the sum of $5,740.00, the total cash price of the trailer. The case was tried before the trial judge without a jury and resulted in a verdict for the plaintiff, upon the theory that there was an implied warranty under sub-sections (1) and (2) of Sec. 33 of Art. 83 of the Sales Act, set forth below.

The Sales Act, Art. 83, Sec. 33 of the Maryland Code (1951) reads, in part, as follows:

> "33. Subject to the provisions of this sub-title and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:
>
> "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it

appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods· shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

\* \* \*

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

The appellant contends:

(1), That the trailer was sold and purchased by its "Trade Name" of "Landola"; consequently, under Sec. 33 (4) there was no implied warranty as to fitness for any particular purpose, and

(2), that the express provisions of the contract of sale negatived any warranties, relative to the sale, express or implied.

· In the view we take of the case, it will be unnecessary to decide (1). The contract of sale contains this provision:

"Buyer has read the foregoing contract after all blanks have been filled in and there are no understandings, agreements, representations or warranties, express or implied, not specified herein, respecting the said trailer or the terms and conditions of the sale above mentioned."

It has been held on innumerable occasions that implied warranties are excluded by an express stipulation in the contract to sell which provides, in effect, that there shall be no warranties, either express or implied. *Oldfield v. International Motor Co.,* 138 Md. 35, 45, 113 A. 632; *Williston on Sales,* (Rev. Ed.) par. 239c; *Williston on Contracts,* (Rev. Ed.) par. 993; *U. L. A. Sales,* par. 15, Ns. 298, 299. The appellees

made no contention of any fraud or misrepresentation, but relied entirely upon the asserted implied warranty under the Sales Act, and the failure of the above quoted language from the contract to negative the implied warranty.

We, therefore, conclude there was no express or implied warranty between the parties to this case, in regard to the contract of sale, and the judgment appealed from must be reversed.

*Judgment reversed, and judgment entered in favor of the defendant, with costs above and below.*