## SENSABAUGH *v.* MORGAN BROTHERS FARM SUPPLY, INC.

[No. 94, September Term, 1960.]

*Decided December 13, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Thomas B. Finan* and *William Walsh,* for appellant.

*Milton Gerson,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

Morgan Brothers Farm Supply, Inc., sued the appellant, Sensabaugh, a contractor, for $11,867.63, representing the balance of the ·purchase price of two pieces of construction equipment, a bulldozer and a loader, and charges for repairs thereto. The defendant filed general issue pleas and a set-off and counterclaim of $8,607.37. After trial before the court without a jury, the court entered judgment for Morgan in the sum of $10,878.63, and Sensabaugh appeals.

In February, 1957, Morgan became an authorized distributor of equipment manufactured by the J. I. Case Company. On May 2, 1957, it sold a bulldozer to Sensabaugh who signed a conditional sales contract in the form of a note payable to Morgan or order in thirty-six monthly installments. The note was assigned with recourse to J. I. Case Credit Company. It contained no reference to any warranties. James Morgan, the President of Morgan, testified that the bulldozer was delivered a few days later, and the purchaser was handed a manual of instructions, containing a warranty by J. I. Case Company printed on the back of the manual. This warranty was "for six months, or five hundred hours of normal usage (whichever terminates first), after date of sale * * * except that the terramatic transmission is warranted for a period of one year or one thousand hours of normal usage * * *. There is no express, implied or statutory warranty by J. I. Case Company other than herein set forth, and no dealer, Company representative or other person is authorized to make any warranty on behalf of J. I. Case Company other than or different from the terms hereof."

The loader was purchased November 10, 1957, and a similar note, containing the terms of the conditional sales contract, was signed by Sensabaugh. James Morgan testified that in this case the manual and warranty were not delivered until several days after delivery of the loader. He admitted that in neither case was the warranty filled out or signed by J. I. Case Company or anyone else. It did not identify any particular purchaser or machine. "It wasn't intended to be executed." He testified that Sensabaugh became in default in his payments and on June 3, 1959, both pieces of equipment were sold at public auction and bought in by him. Suit was for the balance, plus $1,128.93 for repairs. This did not include certain repairs made without charge during the period of six months following each sale.

James Morgan testified that Sensabaugh had asked about warranties prior to the first sale, and he told him they were "500 hours or six months on the main tractor and 1000 hours or one year on the transmission." He admitted telling Sensabaugh, "[W]e had a machine just as good and it would be just as good as our competitive makes." He knew the type of business Sensabaugh was in and had seen some of his jobs. He recommended the machines to him. Specifically, he told him the bulldozer "would perform with a TD9, a D4 or any tractor equivalent in size and horsepower."

Sensabaugh testified that he was doing excavation work early in 1957 when James Morgan called on him and told him he had just been made a Case representative and they had some good machines that were something new on the market and would outperform any comparable machine. James Morgan said, "[I]t would hold up better because it had a torque converter, an all hydraulic machine, and you would have less trouble because you would have less breakage." He started having trouble with the bulldozer a few days after it was delivered. Mr. Morgan told him that he and the manufacturer would stand behind the machine. The hydraulic braking system "went out on it." The track frame, oil filter, brackets and other parts had to be replaced. Mr. Morgan told him not to worry, "[I]t's something new in the way the machine operates, and * * * we are going to take care of them * * *

keep them fixed up." It was the same situation as to the other machine. He could not keep them working and operated them less than one thousand hours during a period when they should have been worked three thousand hours. He finally returned both machines. The installment payments were not in default at that time. Mr. Morgan had promised to replace the machines or rebuild them but did not do so. Mr. Morgan told him the machine was "one of the first ones that came out of the production line." "We will give you a new machine which is a heavier model." He never did so. The witness produced time sheets and records to show the various breakdowns and repairs. His testimony was corroborated by the testimony of a number of other witnesses. He also produced some correspondence with the J. I. Case Company, in which he complained of the machines' performance ever since the time of their purchase, and a reply in which the writer expressed hope of a "satisfactory solution."

The trial court took the view that the purchaser was bound by the terms of the warranty set out on the back of the manual in each case and that the provisions of that warranty precluded any claim on an implied warranty of fitness. Accordingly, he entered judgment for Morgan after crediting Sensabaugh with $989.00 expended for material and oil during the time the express warranty was in effect.

We find it difficult to see how the printed warranty on the back of each manual can control in the instant case. It was never executed by anyone, was not intended to be executed, and contained no description of the goods sold. Even if we assume, without deciding, that the distributor was the agent of the manufacturer, mere delivery of a printed and unexecuted form after the sale had been consummated would not bind the purchaser. The case of *Nat. Trailer Sales Co. v. Pate,* 213 Md. 69, 72, relied upon by the trial court, is readily distinguishable. There the contract of sale signed by the buyer contained a clause that "there are no * * * representations or warranties, express or implied, not specified herein, respecting the said trailer * * *." It was held that this language precluded reliance upon an implied warranty under the Sales Act. The fact that another warranty, and a limi-

tation of liability, was delivered with the trailer was not mentioned in the opinion of this Court and had been ruled out in the court below. In the instant case there was no reference to any warranty in the conditional sales contract, and there is no testimony to show any written order or contract other than the note and conditional sale agreement signed by the purchaser.

Mr. Morgan intimated that the note was silent on the matter because it was intended for assignment to the J. I. Case Credit Company, a separate corporation from the manufacturer. It would seem that evidence to prove a verbal warranty would not be inadmissible as a contradiction of the executed document. *White Auto. Co. v. Dorsey,* 119 Md. 251, 268. Cf. *Rittenhouse, W. Auto. Co. v. Kissner,* 129 Md. 102, 106. But the terms of the warranty, if any, must be found in the oral testimony. There is no testimony to support a theory of incorporation by reference of the written warranty. Upon the most favorable view the written warranty was never brought to the attention of the purchaser until after the machines were delivered and the sales consummated. It was then too late to attach conditions. See Williston, *Sales* § 211 (Rev. ed.) and cases cited. See also *Distillers Distributing Corp. v. Sherwood Distilling Co.,* 180 F. 2d 800, 803 (4th Cir.) and *Diepeveen v. Larry Vogt, Inc.,* 99 A. 2d 329 (Super. Ct. N. J.). Although Mr. Morgan testified that he told the purchaser during the negotiations what the warranties would be, he did not testify that those were the only warranties. On the contrary, he admitted that he represented that the machines would perform as well as other standard makes. Sensabaugh testified that he went even further in his representations.

We think the trier of the facts might find from the evidence that there was an express warranty by the distributor. Cf. *Rittenhouse, W. Auto Co. v. Kissner, supra, Luria Bros. & Co. v. Klaff,* 139 Md. 586, *Schley v. Zalis,* 172 Md. 336, and *Shay v. Joseph,* 219 Md. 273. See also Code (1957), Art. 83, sec. 30. Cf. *Stott v. Johnston,* 229 P. 2d 348, 351 (Cal.), and *Postell v. Boykin Tool & Supply Co.,* 71 S. E. 2d 783 (Ct. App. Ga.). See also Williston, *Sales* § 203 (Rev. ed.). The trial court made no finding as to an express warranty and did not resolve

the conflicts in the evidence because of his view that the printed matter on the manual was controlling. For this reason the case must be reversed and remanded.

Upon remand the trial court should also consider the question of implied warranty under Code (1957), Art. 83, sec. 33. Cf. *Twombley v. Fuller Brush Co.*, 221 Md. 476, 489 et seq. In the instant case, the parties were both familiar with the demands of the construction business, and the question turns on whether there was in fact reliance by the buyer. If, however, there was a defect in the design or workmanship of the machines, as suggested in some of the testimony, and the model was experimental, as claimed, the unfitness of the machines might not have been readily apparent even to an experienced operator. As pointed out in the *Twombley* case, there may also be an implied warranty of fitness for the general purposes for which the product is sold, that is to say, of merchantability. If the machines were unfit for the general purpose of moving earth, the limitations of sec. 33 may be inapplicable. See *Refrigeration Discount Corp. v. Richards,* 284 N. W. 343, 345 (Neb.); *Frigorifico Wilson de la Argentina v. Weirton Steel Co.,* 62 F. 2d 677 (4th Cir.); Notes, 59 A.L.R. 1180 and 90 A.L.R. 410.

> *Judgment reversed and case remanded for further proceedings, not inconsistent with the views here expressed, costs to be paid by the appellee.*