Ross, Respondent, vs. NORTHRUP, KING & Co., Appellant.

*December 12, 1913—March 17, 1914.*

*Sales: Warranty: Seeds: Printed refusal to warrant: Notice: Principal and agent: When relation exists: Rights of undisclosed principal: Customs and usages: General trade custom, when binding.*

1. The fact that a wholesale seed house advertised its seeds in various papers and invited intending purchasers to write for its catalogue and send name of their local dealer, stating that it sold its seeds to retail dealers from whom they might be purchased, is not sufficient to show that a retail dealer who ordered tobacco seed from it at the request of a customer was its agent.

2. Assuming that in ordering seed for a customer a retail merchant acted as the agent of the customer, the undisclosed principal would have no greater rights against the seedsman than such agent would have had if he had purchased for himself.

3. Leaving custom out of consideration, where a certain variety of seed is called for and seed is furnished in response to such call, there is a warranty that it is true to description unless the seller advises the purchaser that the sale is made without warranty.

4. Where to the knowledge of the seedsman seed was ordered from his printed catalogue, and upon the first page of such catalogue, also at the top of the blank order sheet therein and upon one side of the shipping tag attached to the package of seeds,

was conspicuously printed a positive refusal to warrant any seeds as to description, quality, productiveness, or any other matter, or to be in any way responsible for the crop, there was no warranty of the genuineness or productiveness of the seed.

5. In such case, where the seed was ordered by a retail merchant as agent for another, notice to such merchant that the seed was not warranted was notice to his principal; and such would be the effect of notice printed on the invoice, though received after the seed had been delivered to the principal, if the agent might reasonably have notified him before the seed was used.

6. The principal could not escape the effect of such notice by showing that the agent paid no attention to and failed to observe what was so plainly called to his attention.

7. A general trade custom among wholesale seedsmen not to warrant seeds is binding upon a retail dealer purchasing from one of them, although such purchaser may be ignorant of it.

8. The rules of law applicable to a general custom are different from those applicable to a local custom.

9. In an action to recover for breach of an implied warranty of farm seeds, a general trade custom not to warrant being shown, it was immaterial that defendant had previously sent to plaintiff's agent a cabinet containing packages of garden seeds with no disclaimer printed on such packages, at least unless defendant knew that the latter was ignorant of such custom.

APPEAL from a judgment of the circuit court for Vernon county: E. C. HIGBEE, Circuit Judge. *Reversed.*

The defendant is a wholesale dealer in garden and field seeds. It advertised its seeds quite extensively, such advertisements suggesting to prospective purchasers of seeds that they send for defendant's catalogue and also advise it of the name of the prospective purchaser's local dealer. The plaintiff is a farmer who in the spring of 1911 was intending to plant about twenty acres of tobacco. He saw one of defendant's catalogues in which was advertised "Comstock Spanish Tobacco Seed." He desired to raise the variety of tobacco produced from this seed and called on three local dealers in Viroqua in the spring of 1911 to purchase the same. None of these dealers had any of this seed in stock, so he called on a fourth dealer, one Morton, who also advised him that he did not have any of this seed on hand. The plaintiff then stated

that he would himself order the seed from the defendant. Morton then informed him that he was handling some seeds of the defendant and would send and get the tobacco seed for him, and it was finally arranged between them that Morton should order one pound of this variety of tobacco seed. The order was dated on March 27th. When the order was received, the defendant did not have any of this particular variety of seed on hand and sent to Virginia for it. This order apparently was promptly filled, except that the tobacco seed which was sent in response thereto was not Comstock Spanish tobacco seed. It was not possible to tell from an examination of the seed itself that it was not of the variety ordered. The defendant shipped this seed to Morton on April 8, 1911, who thereafter notified the plaintiff of its arrival. The seed was taken by the plaintiff and planted by him and proved to be an inferior variety of tobacco, or one which was not adapted to the soil in which it was planted. The defendant did not know of the circumstances under which the seed was ordered and so sold the same to Morton in the ordinary course of business. Plaintiff brought action against the defendant to recover damages for breach of warranty. Other facts essential to an understanding of the issues in the case will be found in the opinion. The jury returned the following special verdict:

"(1) Was the sale of the package of tobacco seed in question sold by the defendants to the plaintiff? A. Yes.

"(2) Was there at the time of said sale a general custom in the Northwest, including Wisconsin, among seedsmen such as the defendants, to refuse to warrant seeds? A. Yes.

"(3) If you answer question 2 'Yes,' then did the plaintiff have knowledge of the same at the time he purchased said seed? A. No.

"(4) Was there a disclaimer printed upon the bag in which the seed was delivered to the plaintiff? A. No.

"(5) Was the seed in question 'Comstock Spanish' tobacco seed? A. No.

"(6) Did the plaintiff at or before the time of purchase of

the seed in question have knowledge or information of the disclaimer printed in the defendant's catalogue or upon any of its literature or packages? *A.* No.

"(7) If you answer question 5 'No,' then what would have been the reasonable and probable value of plaintiff's 1911 crop had the seed in question been Comstock Spanish tobacco seed? *A.* $2,000.

"(8) What was the reasonable value of plaintiff's 1911 crop as raised? *A.* $985."

Judgment was entered on this verdict in favor of the plaintiff, and defendant appeals therefrom.

For the appellant there was a brief by *C. W. Graves* and *H. P. Proctor,* and oral argument by *Mr. Graves.* They argued, *inter alia,* that defendant was not liable to plaintiff because there was no privity of contract between them. 7 Am. & Eng. Ency. of Law (2d ed.) 104; *Woods v. Ayres,* 39 Mich. 345; 1 Harvard Law Rev. 226; *Lawrence v. Fox,* 20 N. Y. 268; *Mellen v. Whipple,* 1 Gray, 317; 44 Cent. L. J. 93; *Davidson v. Nichols,* 11 Allen, 517; *Roddy v. M. P. R. Co.* 104 Mo. 234, 15 S. W. 1112; *Thomas v. Winchester,* 6 N. Y. 377; *Ware v. Brown,* 2 Bond, 267; *Ferris v. Carson W. Co.* 16 Nev. 44, 40 Am. Rep. 405; *Fowler v. Athens W. W. Co.* 83 Ga. 219, 9 S. E. 673; *Becker v. Keokuk W. W.* 79 Iowa, 419, 44 N. W. 694, 18 Am. St. Rep. 377; *Phœnix Ins. Co. v. Trenton W. Co.* 42 Mo. App. 118; *Necker v. Harvey,* 49 Mich. 517, 14 N. W. 503; *Hasbrouck v. Armour & Co.* 139 Wis. 357, 121 N. W. 157; Williston, Sales, § 244; *Nelson v. Armour P. Co.* 76 Ark. 352, 90 S. W. 288; *Smith v. Williams,* 117 Ga. 782, 45 S. E. 394; *Prater v. Campbell,* 110 Ky. 23, 60 S. W. 918; *Lebourdais v. Vitrified W. Co.* 194 Mass. 341, 80 N. E. 382; *Tomlinson v. Armour & Co.* 74 N. J. Law, 274, 65 Atl. 883; 2 Mechem, Sales, § 1834; *Dukes v. Nelson,* 27 Ga. 457; *Farrell v. Manhattan M. Co.* 198 Mass. 271, 84 N. E. 481; *Nixa C. Co. v. Lehmann-Higginson Co.* 70 Kan. 664, 79 Pac. 141. Plaintiff was bound

by the general custom of seedsmen not to warrant seeds. *Leonard S. Co. v. Crary C. Co.* 147 Wis. 166, 132 N. W. 902; *Blizzard Bros. v. Growers' C. Co.* 152 Iowa, 257, 132 N. W. 66; *Hewitt v. John Week L. Co.* 77 Wis. 548, 46 N. W. 822; *Shores L. Co. v. Stitt,* 102 Wis. 450, 78 N. W. 562; *Gehl v. Milwaukee P. Co.* 105 Wis. 573, 580, 81 N. W. 666; *Mooney v. Howard Ins. Co.* 138 Mass. 375; *Smith v. Clews,* 114 N. Y. 190, 21 N. E. 160; *Taylor v. Bailey,* 169 Ill. 181, 48 N. E. 200; *Austrian v. Springer,* 94 Mich. 343, 54 N. W. 50. Defendant was not liable upon an implied warranty, not being a grower or producer of the seed. 55 Cent. L. J. 465; *Shisler v. Baxter,* 109 Pa. St. 443; *Lovegrove v. Fisher,* 2 Fost. & Fin. 128; *Lord v. Grow,* 39 Pa. St. 88, 80 Am. Dec. 504; *Kircher v. Conrad,* 9 Mont. 191, 23 Pac. 74, 7 L. R. A. 471; *Calhoon v. Brinker,* 17 Ohio Dec. N. P. 705.

For the respondent there was a brief by *Bunge & Bosshard,* and oral argument by *George W. Bunge.* They cited, among other cases, *Hoffman v. Dixon,* 105 Wis. 315, 81 N. W. 491; *Fuhrman v. Interior W. Co.* 64 Wash. 159, 116 Pac. 666, 37 L. R. A. N. s. 89; *Leonard S. Co. v. Crary C. Co.* 147 Wis. 166, 132 N. W. 902, 37 L. R. A. N. s. 79; *Vaughan's S. Store v. Stringfellow,* 56 Fla. 708, 48 South. 417.

The following opinion was filed January 13, 1914:

BARNES, J. The appellant argues at length that the relation of buyer and seller existed between the defendant and the storekeeper, Morton, and also between the plaintiff and Morton, and that there was no privity of contract between the plaintiff and the defendant, and, there being no contract relation between them, there was no contract to breach and of course no right of action for a breach.

The respondent contends (1) that Morton acted as the agent of both parties to the transaction, and, (2) if this be not so, that he acted as the agent of the plaintiff, and that

plaintiff as an undisclosed principal has the same right of action against the defendant that Morton would have had, had he himself planted the seed.

The facts relied on by the plaintiff to show that Morton acted as the agent of the defendant in the transaction are wholly inadequate to show that the relation of principal and agent existed between those parties. The defendant advertised its seeds in the Wisconsin Agriculturist and other papers. Such advertisements requested prospective purchasers to send for its catalogue. A blank coupon to be used in ordering the catalogue was included in the advertisement. In the coupon there was a blank space in which was to be inserted the "local dealer's name," and in the advertisement proper this sentence was used: "Use the coupon or write us a postal, giving the name of your dealer, and sign at the bottom of the card with your own name." The language used advised the prospective purchaser that defendant sold its seeds to retail dealers from whom they might be purchased by those desiring to plant them. We think it is too plain to warrant discussion that this advertisement did not make every retail dealer in seeds in the United States the agent of the defendant. Inasmuch as the plaintiff must contend, in order to recover, that the storekeeper acted as his agent, it is not very material for the purposes of the case whether or not it be said that he also acted as the agent of the defendant, because we think the same result would follow in either case.

In disposing of the case we will assume that the evidence was sufficient to warrant a court or jury in finding that the relation of buyer and seller did not exist between the plaintiff and Morton and that Morton acted as the agent of the plaintiff, an undisclosed principal, in ordering the goods. This is the most favorable view for the plaintiff that the evidence will warrant.

It is apparent that the material question in the case is whether the tobacco seed was sold to Morton with or without

a warranty that it was true to description. Defendant knew nothing of the plaintiff in the transaction. Plaintiff's rights against the defendant are no greater than Morton's would be if he had been the real instead of the ostensible principal. This is frankly conceded by respondent in the brief filed, and advisedly so.

Leaving any question of custom out of consideration, where a certain variety of seed is called for and seed is furnished in response to such call, there is a warranty that it is true to description unless the seller advises the purchaser that the sale is made without warranty. *Hoffman v. Dixon,* 105 Wis. 315, 81 N. W. 491. There is no doubt that the vendor may sell without warranty. *Leonard S. Co. v. Crary C. Co.* 147 Wis. 166, 132 N. W. 902. Were the goods so sold to Morton? He had the defendant's catalogue before him when he placed the order and ordered from it. He so testifies. The defendant knew that he ordered from the catalogue, because one of the two items called for was ordered by the catalogue number. Between the cover and the first page of the catalogue there was a blank order sheet for customers to detach and use in ordering seeds. Immediately above the blank spaces in which the order was to be written was a printed statement to the effect that defendant gave "no warranty, express or implied, as to description, quality, productiveness, or any other matter of any seeds . . . they send out, and will not be in any way responsible for the crop."

On the first page of the catalogue proper there was printed in large type the words *"General suggestions to customers."* There were a dozen such suggestions made, the first word or words in each instance, indicating the nature of the suggestion, being printed in large, heavy type. One of these headings consisted of the word *"Disclaimer"* so printed, and immediately following it was a statement substantially like the one quoted above.

The two packages ordered from the defendant were

wrapped in one bundle and shipped by express. One side of the shipping tag contained the name and address of the consignee. On the reverse side there was printed in red ink and in conspicuous type the following words, which were underscored as indicated:

*"Northrup, King & Co. do not give, and their agents are forbidden to give, any warranty, express or implied,* as to description, quality, productiveness, or any other matter of any seeds, bulbs or plants they send out, and will not be in any way responsible for the crop. If the purchaser does not accept the goods on these terms, they are at once to be returned and money paid for same will be promptly refunded."

The goods were shipped on April 8th and were followed by an invoice two days later. There was printed near the head of the invoice a statement like that contained in the catalogue to the effect that the goods were sold without warranty. In reference to this invoice the respondent claims that it was not received until after the seed had actually been delivered to the plaintiff. There is some testimony given by Morton to the effect that the invoice was not received until the day after the seed was delivered and some testimony which would indicate that the seed had not been delivered when the invoice came. We accept the statement that there had been an actual delivery before receipt of the invoice. But what of it? It is not claimed that any use had been made of the seed in the meantime. The relation of principal and agent existed between the plaintiff and Morton. The latter could communicate with the former by telephone; at least he testified that he telephoned plaintiff when the seed arrived. The invoice was retained without objection; so was the seed, and the seed was thereafter paid for in the usual course of business. Morton testified that he did not read or pay any attention to any of these nonwarranty provisions. If Morton had observed the conditions printed on the invoice it would certainly have been his duty to inform his principal of them.

The defendant having the right to sell without warranty,

it seems clear that it did all that could in reason be required of it to advise the purchaser of the condition upon which the seed was sold. Of course it is easy to imagine other things which it might have done which would be better calculated to give notice, but if those things had been done and had proved inefficacious, still other things might be suggested which would surely acquaint Morton with the conditions of sale. The business was transacted by mail. Where the book from which the order was given, the shipping tag, and the invoice, all stated these conditions, it would seem to be unreasonable to hold that any blame attached to the defendant if Morton failed to observe all of these things. The evidence is quite convincing to show that there was a disclaimer of warranty printed on the bag containing the tobacco seed also, but there was a sufficient conflict in the evidence on this point to make the question one for the jury, and it found that there was none.

Mr. Morton could not close his eyes to the information that was literally staring him in the face and then hold the defendant liable because he did so. In matters of contract one must observe what he has reasonable means of knowing. The law for the protection of persons even against fraud will not be extended to those who "having the means in their own hands neglect to protect themselves. . . . The law requires men, in their dealings with each other, to exercise proper vigilance, and apply their attention to those particulars which may be supposed to be within reach of their observation and judgment and not close their eyes to the means of information which are accessible to them." *Mamlock v. Fairbanks,* 46 Wis. 415, 417, 418, 1 N. W. 167; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 400, 89 N. W. 538, 92 N. W. 246.

And where a purchaser is put upon inquiry as to the quality of the thing offered for sale, he is bound to know what is discoverable in regard thereto by the exercise of ordinary care, and he cannot "close his eyes to defects which are be-

fore him or to information which is at hand." *Warner v. Benjamin,* 89 Wis. 290, 62 N. W. 179.

In the absence of fraud "a man cannot relieve himself from the obligation of a written agreement by saying he did not read it when he signed it, or did not know what it contained." *Deering, v. Hoeft,* 111 Wis. 339 (87 N. W. 298), and cases cited on page 343; *Steffen v. Supreme Assembly,* 130 Wis. 485, 487, 110 N. W. 401.

The presumption arises from the delivery and acceptance of a bill of lading that the party receiving it assented to its terms. Ignorance of its contents "arising from failure to read it or to make some reasonable effort to obtain information in that regard, in the absence of any evidence of fraud . . . or of the use of any means to deter the shipper from fully understanding the contract, is not sufficient to overcome it." *Schaller v. C. & N. W. R. Co.* 97 Wis. 31, 41, 71 N. W. 1042; *Ullman v. C. & N. W. R. Co.* 112 Wis. 150, 88 N. W. 41. Other cases of the same tenor are *Herbst v. Lowe,* 65 Wis. 316, 26 N. W. 751; *Farr v. Peterson,* 91 Wis. 182, 64 N. W. 863; *J. Thompson Mfg. Co. v. Gunderson,* 106 Wis. 449, 453, 82 N. W. 299; and *Ripley v. Page L. & I. Co.* 138 Wis. 304, 119 N. W. 108.

There is still another insurmountable difficulty in the way of plaintiff's recovery. The jury found that at the time of the sale there was "a general custom in the Northwest, including Wisconsin, among seedsmen such as the defendants, to refuse to warrant seeds." The jury also found that the plaintiff did not know of such custom. The jury made no such finding in reference to Morton. There is no evidence to show whether he knew of such custom or not. He did testify that he had no notice from any source that the defendant would not sell its seeds with a warranty. This might all be true and still the general custom such as the jury found might not only exist, but Morton might have knowledge of it. It is probable that, had he been asked the direct question, he

would have denied all knowledge of the custom, and we will
assume that on the evidence referred to the court might have
found lack of knowledge, and that it actually did so find.

It is not the law that ignorance of a general trade custom
relieves a party from the effect of it. If there was a general
custom among seedsmen such as was found, Morton as a re-
tail dealer in seeds was bound to know of it.

"The object of proving a general custom is not to contradict
or change a contract made between the parties, but to inter-
pret it to the court and jury as it was understood by the par-
ties at the time it was made; and this evidence of a general
custom, when it does not contradict or change the express
terms of the written contract, is admitted for the purpose of
showing what the real contract between the parties was. . . .
And, when it is clearly proven, the parties are supposed to
have contracted with reference to such custom, unless such
custom changes the express terms of the written contract."
*Hewitt v. John Week L. Co.* 77 Wis. 548, 556, 46 N. W. 822,
and cases cited.

"A uniform trade custom is readily accepted by courts to
define what is ambiguous or is left indeterminate in a con-
tract, where both parties have knowledge of the custom, or
are so situated that such knowledge may be presumed, for the
reason that the majority of such transactions are had in view
of the custom, and the agreement on which the minds of the
parties actually met will thereby be carried into effect. . . .
Where the custom is proved to be known to both, it may even
add terms to the contract. . . . Where the custom is *general,*
it will be presumed to have entered into the contract, and one
may be bound thereby although ignorant, unless the other
party be shown to have knowledge of his ignorance." *Gehl v.
Milwaukee P. Co.* 105 Wis. 573, 580, 81 N. W. 666.

Replying to the argument of counsel in another case, that
a custom in order to be binding must be known to both par-
ties to the contract, or it must have existed a sufficient length
of time to raise a presumption of knowledge, the court said:

"That rule of course prevails in case of an attempt to annex
to a contract some incident not expressed therein, as in the

case of *Hewitt v. John Week L. Co.* 77 Wis. 548, 46 N. W. 822, where the question was whether the owner of a sawmill, under his contract to saw logs by the thousand, was entitled to the slabs. There is a difference between evidence of usage to establish a custom for the purpose of annexing that as an incident to a contract, and the same kind of proof to show the meaning of some word or term used in a contract. In the latter situation the meaning of the term as understood at the time and place of the contract governs, whether both of the parties knew of such meaning or not. They are presumed to contract with reference to the meaning of words and terms used by them, as such words and terms are understood at the place of their contract." *Shores L. Co. v. Stitt,* 102 Wis. 450, 455, 78 N. W. 562.

The case at bar is in its facts very much like one recently decided by the supreme court of Iowa, from which we quote the following:

"The alleged liability of the Younkerman Seed Company may be considered first. The evidence that a general custom, such as pleaded, prevails in the seed trade was conclusive. The particular package had the printed matter thereon, and, though this may not have been noticed, the sale is presumed to have been negotiated with reference to the general custom of the trade. . . . This being so, a warranty that the seed was true to name could not be inferred, and the court rightly found in favor of the Younkerman Seed Company." *Blizzard Bros. v. Growers' C. Co.* 152 Iowa, 257, 132 N. W. 66, 67.

This case is cited with approval in *Leonard S. Co. v. Crary C. Co.* 147 Wis. 166, 132 N. W. 902, where the material facts in the *Blizzard Case* are set forth.

Speaking of a general custom pertaining to the manner in which mines were operated, the Iowa court in another case said:

"Again, it is said there is no showing that defendant had notice or knowledge of the custom. This is not necessary. The custom or usage being shown by competent evidence, the defendant is presumed to have had knowledge thereof. This

is fundamental." *Thayer v. Smoky Hollow C. Co.* 121 Iowa, 121, 127, 96 N. W. 718.

The rules of law applicable to a general custom should not be confounded with those applicable to a local custom. *John O'Brien L. Co. v. Wilkinson,* 123 Wis. 272, 101 N. W. 1050, and cases cited.

It is argued that the evidence was not sufficient to warrant the finding of a general custom. We think it was.

The conclusions which follow from the foregoing discussion may be summarized as follows: (1) The defendant offered the tobacco seed in question for sale without a warranty, as it had the right to do, and adopted reasonable and adequate means of advising the purchaser, Morton, that the seed was so offered, and in so doing performed its full duty to the purchaser, there being no evidence of fraud or bad faith; (2) Morton was chargeable with knowledge of the condition upon which the sale was made; and (3) Morton was chargeable with knowledge of the general custom which the jury found to exist. Under these conditions Morton would have no right of action against the defendant, and therefore his undisclosed principal would have no such right. These conclusions would, we think, follow if Morton acted as the agent of both parties, because it would be his duty as agent of the plaintiff to communicate to him the knowledge with which he was chargeable.

Considerable stress seems to be laid by respondent on the fact that prior to the purchase of the tobacco seed the defendant had sent to Morton a cabinet containing packages of garden seeds for sale on consignment and that no disclaimer was printed on these packages. If there was a general custom such as the jury found, it was immaterial whether there was a disclaimer on the packages or not, unless the defendant knew that Morton was ignorant of such custom, and there is no claim that it had such knowledge. Besides, if defendant

saw fit to sell its garden seeds with a warranty, that would be no particular reason why it should sell its field seeds in the same way. The damages recoverable for breach of warranty on the sale of small packages of garden seeds would ordinarily be inconsequential, while in the case of field seeds the reverse would be true. In the present case the pound of tobacco seed was sold to Morton for $2.25. The damages recovered were $1,015. It may seem unjust that the purchaser should suffer this loss. But it is apparent that if seed houses warranted their seeds they would have to sell at a very much higher price than if no warranty were given. If the defendant had sold 100 pounds of this seed instead of one pound, it would receive therefor $225, and on the basis of plaintiff's recovery would be liable for over $100,000 damages. It purchased the seed in Virginia and admittedly ordered the variety which the plaintiff desired. The evidence shows that there was no way in which the substitution could be discovered until the tobacco plants were pretty well grown. Large seed houses who draw their supply of seeds from different parts of this and perhaps other countries cannot well grow all the seeds which they handle. They are liable to be imposed on, and must either adopt the practice of selling without warranty or of selling with one and imposing on the consumer an added price sufficient to make good the losses sustained by reason of the failure of the seed sold to comply with the warranty.

A number of other questions are discussed in the briefs which have been considered but which need not be alluded to in the opinion, which is already lengthy enough.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on March 17, 1914.