CALUMET CHEESE COMPANY, INC., Plaintiff and Respondent, v. CHAS. PFIZER & COMPANY, INC., Defendant and Appellant: UNION CARBIDE CORPORATION, Impleaded Defendant and Respondent.*

*September 3—September 29, 1964.*

---

[6] *Clarke v. Lincoln Lumber Co.* (1884), 59 Wis. 655, 18 N. W. 492; *Thronson v. Universal Mfg. Co.* (1916), 164 Wis. 44, 159 N. W. 575.

* Motion for rehearing denied, with costs, on November 24, 1964.

58

For the defendant-appellant there were briefs by *Wick-ham, Borgelt, Skogstad & Powell,* attorneys, and *Arthur Wickham* of counsel, all of Milwaukee, and oral argument by *Arthur Wickham.*

For the plaintiff-respondent there was a brief and oral argument by *Ray T. McCann* of Milwaukee.

For the impleaded defendant-respondent there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland,* and *Reginald W. Nelson,* all of Milwaukee, attorneys, and *Ashley Cole* of New York, New York, of counsel, and oral argument by *Mr. Nelson.*

HEFFERNAN, J. Pfizer's contentions may be grouped in four separate categories:

## 1. *Disclaimer by Pfizer.*

Pfizer in defense of the action brought by Calumet relies on a disclaimer printed on the back of eight invoices and seven order acknowledgments. In small print at the bottom of the face of the invoice appears the following:

"This transaction is subject to SELLER'S STANDARD CONDITIONS printed on the back hereof, notwithstanding any provision submitted by the BUYER."

The conditions on the back that are material are:

"2. Seller makes no warranty of any kind, express or implied, except that the material sold shall be of merchantable quality and the Buyer assumes all risk whatsoever as to the result of the use of the materials purchased, whether used singly or in combination with other substances. No claim of any kind, whether as to materials delivered or for nondelivery of materials, shall be greater in amount than the purchase price of the materials in respect of which such damages are claimed; and failure to give notice of claim within ten days from the date of delivery, or the date fixed for delivery, respectively, shall constitute a waiver by Buyer of all claims in respect of such materials.

"8. These standard conditions constitute the entire agreement between the parties hereto, and there are no understandings, representations or warranties of any kind, express or implied, not expressly set forth herein. No modification of these conditions shall be effective unless in writing and signed by the party claimed to be bound thereby."

The printing on the invoices and acknowledgments is hardly legible, and is in very fine print. The invoices are printed on very thin, unsized paper that is nearly transparent. Marks and typing on the front of the invoices show through to the back and further inhibit the readability of the disclaimer. Although the Sales Act allows disclaimers, sec. 121.71, Stats., Pfizer cannot avoid liability on the facts here.

The cases relied upon by Pfizer are distinguishable because in each the disclaimer was brought to the attention of the buyer. *Ross v. Northrup, King & Co.* (1914), 156 Wis. 327, 144 N. W. 1124; *Pokrajac v. Wade Motors, Inc.* (1954), 266 Wis. 398, 63 N. W. (2d) 720; *Hyland v. GCA Tractor & Equipment Co.* (1957), 274 Wis. 586, 80 N. W. (2d) 771. In *Ross,* the disclaimer was printed on top of the seed-order form. In *Pokrajac,* the buyer signed the auto-purchase contract containing the "as is" clause.

In *Hyland,* the purchaser of the power shovel signed a conditional sales contract and lease in which the seller made a clear disclaimer. Pfizer cannot rely on a disclaimer which is nearly impossible to read. If one party intends to bind another in this manner, the very least that must be required is that the provisions of the disclaimer be legible. This is the rule of the "parking lot" cases in which this court holds that the provisions of the ticket must be brought to the attention of the car owner. *O'Brien v. Isaacs* (1962), 17 Wis. (2d) 261, 116 N. W. (2d) 246.

The language of the New Jersey court in the well known case of *Henningsen v. Bloomfield Motors, Inc.* (1960), 32 N. J. 358, 365, 161 Atl. (2d) 69, 75 A. L. R. (2d) 1, is appropriate here:

"These two paragraphs are the least legible and the most difficult to read in the instrument, but they are most important in the evaluation of the rights of the contesting parties. They do not attract attention and there is nothing about the format which would draw the reader's eye to them. In fact, a studied and concentrated effort would have to be made to read them. De-emphasis seems the motive rather than emphasis."

This view is supported in other jurisdictions by such cases as *Reliance Varnish Co. v. Mullins Lumber Co.* (1948), 213 S. C. 84, 48 S. E. (2d) 653, and *Cutler Corp. v. Latshaw* (1953), 374 Pa. 1, 7, 97 Atl. (2d) 234, 237. In the latter case, the court said that the confession-of-judgment clause printed in small type on the back of the contract was "no more part of the agreement entered into than the advertisements on the walls of the room in which the contract is signed."

Although we find that the illegibility of the disclaimer makes it ineffective, it should also be pointed out that the evidence indicates that the disclaimer as a part of the invoice was transmitted only after the contract was made and

hence was in any event ineffective in imposing additional obligations upon the purchaser.

## 2. *Warranty of Fitness for Particular Purpose.*

The jury found that Pfizer warranted that Sorbistat-K was fit for the use in cheese. This is supported by the evidence. The president of Calumet testified that he was persuaded by a Pfizer salesman to substitute as a cheese additive Pfizer's Sorbistat-K. Since this finding of the jury is supported by credible evidence, that finding must be sustained.

Pfizer contends that this was a sale under a trade name and therefore the only warranty is that of fitness for a general purpose. See sec. 121.15 (4), Stats., which states that a sale under a trade name negates any "implied warranty as to its fitness for any particular purpose."

Although Sorbistat-K is the trade name that Pfizer used to sell the product potassium sorbate, the rule does not apply here. The mere fact that a product has a trade name does not negate the implied warranty of fitness for a particular purpose. In *Green Mountain Mushroom Co., Inc., v. Brown* (1953), 117 Vt. 509, 516, 95 Atl. (2d) 679, 683, the court held:

". . . the fact that an article has a trade name does not of itself necessarily preclude the existence of an implied warranty for fitness for particular purpose. Such a warranty may exist where, although the article has a trade name, the purchase is not made by, or in reliance on the name, but is made for a particular purpose and supplied for that purpose, in reliance on the seller's judgment."

In that case, the corporation purchased roofing and a cement called "Barrett S. I. S." The dealer knew the purpose for which the cement was going to be used and the dealer suggested the particular cement. It was held that

despite the trade name there was a warranty for fitness for particular purposes. In the instant case Pfizer urged the use of its product for inhibiting the growth of mold in cheese. The sale was not under a trade name. It was rather a sale on the basis of specific characteristics of the product that were urged by Pfizer. There is in fact some evidence to show that the original order was for sorbic acid and not for the product Sorbistat-K.

Vold in his text, Law of Sales (2d ed. 1959), states on page 441, sec. 90, the reason for not applying the rule of a sale under a trade name in all cases:

"The patent or trade-name may be used as the convenient way in which to identify the goods. . . . the buyer buys in reliance on the seller's selection with regard to suitability; not because of the designation of the patent or trade-name. The sale may be of an article identified by a patent or trade-name. It is not, however, a sale 'under' that trade-name. It is a sale 'under' the seller's selection as to suitability. Accordingly, those cases are to be preferred which on such facts have applied the seller's warranty of suitability."

1 Williston, Sales (rev. ed. 1948), p. 616, sec. 236a, states the general rule that under the Sales Act a sale under a patent or trade name is not subject to an implied warranty of fitness for a particular purpose. He cautions, however, as follows:

"It is possible, moreover, to have a more specific warranty, even though the contract or sale is one for goods sold under a patent or trade name. An implied warranty of fitness for the buyer's particular purpose is not excluded if the buyer, when he discloses to the seller that purpose, relies on the seller's skill and judgment to furnish appropriate goods and the seller then selects goods which have a patent or trade name."

The jury did find that Pfizer warranted the product, that Calumet relied on the warranty, and that Pfizer breached the

warranty. It is clear Sorbistat-K as used was not suited for the particular purpose of inhibiting mold growth in cheese. These findings are supported by substantial evidence.

### 3. *Negligence of Pfizer.*

The finding of negligence by Pfizer is supported by the evidence. The evidence clearly shows that Pfizer was fully aware that Sorbistat-K was to be used in cheese. It never communicated this fact to Carbide, the manufacturer. Pfizer, though it knew that Sorbistat-K was not approved by the Federal Food and Drug Administration for use in cheese nevertheless urged Calumet to use it and failed to advise Calumet of the lack of such approval. Those facts support the finding of negligence.

Pfizer's contention that negligence can be bargained out of a contract by a disclaimer clause need not be discussed, since we have held that the disclaimer herein was ineffective for the reasons stated.

### 4. *Liability of Carbide, Indemnity Agreement,*
### *Timely Notice.*

The jury also found that Carbide was negligent in the manufacture and sale of Sorbistat-K to Pfizer. It appears that evidence before the jury is sufficient to support that finding.

Pfizer relies primarily on an alleged "indemnity" agreement, which was contained in Pfizer's confirmations of its orders to Carbide. The pertinent portion of the confirmation provides that, "Seller agrees to defend, indemnify and hold harmless the Buyer against any and all liability, . . . resulting from any breach . . . of . . . warranties." The trial court properly held that Pfizer failed, however, to establish by a fair preponderance of the evidence that the

confirmations with the conditions were received by Carbide prior to the shipment of the goods. There was a failure on the part of Pfizer to show that the indemnity clauses were a part of the contract itself and not subsequent to it. However, even though it could be shown that the agreement of indemnification was a part of the contract, there can be no recovery by Pfizer against Carbide.

All parties to this lawsuit, and the court, proceed on the theory that New York law governs the relationship between Pfizer and Carbide. This need not be decided since Pfizer can recover under the law of neither state.

It cannot recover on the basis of warranty, since sec. 121.49, Stats., and the equivalent section of the New York act requires that if "the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

Pfizer was aware of the effect of Sorbistat-K on the cheese products sold by Calumet as early as March, 1961, yet it first notified Carbide in October, a delay of seven months. The jury's finding that this delay was unreasonable is sustained by the evidence, *Schaefer v. Weber* (1953), 265 Wis. 160, 60 N. W. (2d) 696, and *Schroeder v. Drees* (1957), 1 Wis. (2d) 106, 83 N. W. (2d) 707.

The jury found that in the action between Pfizer and Carbide, 90 percent of the negligence was attributable to Pfizer and 10 percent to Carbide. The rule that any contributory negligence is a bar prevails in New York, *Tornambe v. Tornambe* (1962), 227 N. Y. Supp. (2d) 237, affirmed (1963), 12 N. Y. (2d) 1003, 189 N. E. (2d) 625, and under the Wisconsin law, Pfizer would be barred by the comparative-negligence statute sec. 331.045, since it is more negligent than Carbide. Nor are there any rights of contribution. The negligence with which Carbide is chargeable is negligence only in regard to Pfizer, and not in regard

to Calumet. It shares with Pfizer no common liability and hence there can be no contribution. *Bielski v. Schulze* (1962), 16 Wis. (2d) 1, 114 N. W. (2d) 105.

*By the Court.*—Judgment affirmed.

CURRIE, C. J., took no part.