TATERKA, Plaintiff-Appellant, v. FORD MOTOR COMPANY, Defendant-Respondent.

Supreme Court

*No. 76–230. Submitted on briefs November 1, 1978.— Decided November 28, 1978.*
(Also reported in 271 N.W.2d 653.)

For the appellant the cause was submitted on the briefs of *Steven A. Taterka,* pro se, of Concord, N.H.

For the respondent the cause was submitted on the brief of *Robert L. Binder* and *Foley & Lardner* of Milwaukee.

CONNOR T. HANSEN, J. On September 20, 1971, Taterka entered into a contract to purchase a 1972 Ford Mustang from a Milwaukee Ford dealer. Taterka took delivery of the car on January 14, 1972. At that time he was given an owner's manual and a Warranty Facts

booklet. In October, 1974, Taterka discovered that the taillight assembly gaskets had been installed in a way which permitted water to enter causing rust to form. On November 7, 1974, Taterka notified Ford of this rust problem by calling Ford's Boston district office. Ford did not take any action to correct the problem and Taterka commenced this action on July 28, 1975.

The record reflects Ford had recognized that it had a rust problem with its 1969–1972 model cars. On August 25, 1972, General Field Bulletin No. 550 was issued by Ford authorizing Ford's regional and district managers to provide coverage for rust repairs in response to individual customer complaints. This service program would pay 100 percent of the repair costs up to 24 months and 75 percent from 24 to 36 months. Dealers were not notified of the program.

Taterka also introduced other Ford documents concerning the rust problem. One report dated October 19, 1973, indicated that the "General Product Acceptance Specification" (GPAS) permitted no "metal perforation on exterior appearance panels" for five years. The report observed that Ford's products seemed competitive for the one and two–year requirements but otherwise did not satisfy the GPAS in a "severe corrosion environment" because perforations developed one to two years earlier in Fords than in competitor's automobiles.

In its motion for summary judgment Ford relied on the expiration of the express warranty prior to Taterka's notice and the disclaimers of all implied warranties in the Warranty Facts booklet.

Taterka attacked the express warranty by contending that the 12 months/12,000 mile limit was manifestly unreasonable or unconscionable where a latent defect, such as one that causes rust, was not discoverable within that time. He also argued that the auto was unmerchantable and unfit for the intended use and that

Ford's disclaimer of these implied warranties was ineffective because it was made subsequent to the contract of purchase.

In a decision dated June 15, 1976, granting Ford's motion for summary judgment, the trial court concluded that Taterka's claim was without merit because the auto was merchantable. The court stated:

". . . It seems to the Court that to state the facts is to dispose of the case. A manufacturer is not expected to manufacture an automobile that is perfect in every detail nor is he expected to manufacture an automobile that operates indefinitely. This automobile, having been driven 90,000 miles, has used up approximately most of its useful life. Certainly it cannot be claimed that the automobile was not merchantable at the time of purchase. *Tracy v. Vinton Motors, Inc.*, 130 Vt. 512, 296 A.2d 269, 272 (1972)."

The dispositive issue on this appeal is whether the trial court abused its discretion in granting the motion for summary judgment.

We have held that summary judgment may be granted where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Sec. 802.08(2), Stats. The trial court is to determine from the pleadings and affidavits whether a cause of action is alleged and whether any material issues of fact are presented. *Krezinski v. Hay*, 77 Wis.2d 569, 572, 573, 253 N.W.2d 522 (1977). Summary judgment may be granted where there is no factual dispute or where no competing inferences arise from undisputed facts and the law resolving the issues is clear. *Lecus v. American Mut. Ins. Co. of Boston*, 81 Wis.2d 183, 189, 260 N.W.2d 241 (1977); *Matthew v. American Family Mut. Ins. Co.*, 54 Wis.2d 336, 339, 195 N.W.2d 611 (1972).

In considering a motion for summary judgment the trial court may decide a point of law not previously decided, but is not required to. *United Farm Agency, Inc. v. Niemuth,* 47 Wis.2d 1, 6, 176 N.W.2d 328 (1970). It is an abuse of discretion to decide a legal issue incorrectly or to decline to consider a legal issue capable of resolution in a factual vacuum. *Ceplina v. South Milwaukee School Board,* 73 Wis.2d 338, 340, 243 N.W.2d 183 (1976).

Therefore in order to determine whether there was an abuse of discretion we must consider the issues presented, which are:

1. Whether a substantial fact issue exists regarding merchantability which would preclude granting a motion for summary judgment?

2. Whether the disclaimer of implied warranties was untimely and therefore ineffective?

3. Whether the 12 months/12,000 mile limit on Ford's express warranty was manifestly unreasonable when applied to a latent defect?

Taterka first contends that the trial court abused its discretion in granting summary judgment because a material issue of fact existed regarding the auto's merchantability.

Merchantability is defined in sec. 402.314, Stats.:

"402.314 **Implied warranty: merchantability; usage of trade.**

" . . .

"(2) Goods to be merchantable must be at least such as:

"(a) Pass without objection in the trade under the contract description; and

" . . .

"(c) Are fit for the ordinary purposes for which such goods are used; and . . ."

A finding of merchantability requires an examination of the defects alleged to exist in the particular product in light of the standard of quality expected for that product.

The issue of merchantability presents a question of fact. The question to be answered is whether conflicting inferences can be drawn from the undisputed facts.

Taterka alleged manufacturing defects including improper corrosion treatment and installation of taillight assembly gaskets. This allegation was supported by a newspaper article on the Ford rust problem, an affidavit from a body shop owner and Ford's own research reports on the rusting. Ford denied this allegation of manufacturing defects but did not respond with counteraffidavits. Ford also argues that the automobile's merchantability and fitness were demonstrated by the fact that it was driven as a personal vehicle in excess of 75,000 miles.

Where automobiles are concerned the term "unmerchantable" has only been applied where a single defect poses a substantial safety hazard or numerous defects classify the car as a "lemon." *See e.g., Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J. Super. 441, 240 Atl.2d 195 (1968) ; *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 Atl.2d 69 (1960) ; *Anno.,* 83 A.L.R.3d 694, sec. 5(b) (1978). The ordinary purpose for which a car is intended is to provide transportation. Where a car can provide safe, reliable transportation it is generally considered merchantable. 83 A.L.R.3d 694, sec. 5(a) (1978).

Ford also directs our attention to *Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 265 N.W.2d 513 (1978), for the proposition that the auto here is merchantable. In *Murray* the motor home had numerous defects which rendered it virtually useless and the court held that the limited remedy of repair or replacement of defective

parts would be unconscionable under these circumstances. The case does not discuss merchantability but does, to some extent, demonstrate the nature of defects that will render a manufacturer's warranty unconscionable.

The automobile here involved had been driven for 33 months and in excess of 75,000 miles without a serious misadventure. In fact, it had been driven 90,000 miles at the time of the hearing on the motion for summary judgment in 1976. The only inference that can reasonably be drawn from the undisputed facts is that the rust problem described in this case did not render the car unfit for the purpose of driving and therefore unmerchantable. Since conflicting inferences did not arise from the undisputed facts, summary judgment was appropriate.

Taterka next contends that Ford's disclaimer of implied warranties was ineffective because it was given to him at the time of delivery and therefore subsequent to the execution of the sales contract. No argument is made that the disclaimer did not meet the requirements of sec. 402.316 (2), Stats.

The trial court did not address the issue of whether an implied warranty existed. Its decision seems to rest on the determination of merchantability. We construe the decision to imply that the disclaimer was ineffective. However, we deem it necessary to consider the issue.

Sec. 402.316 (2), Stats., provides for disclaimer of implied warranties. The statute is silent as to when the disclaimer must be made. Taterka cites authorities in which dealers have endeavored to protect themselves using the manufacturer's disclaimer. Because of significant factual distinctions, they are not of material assistance in the instant case.[1]

[1] *Woodward v. Naylor Motor Sales*, 14 UCC Rep. Serv. 1269 (Mich. D. Ct. 1974); *Koellmer v. Chrysler Motors Corp.*, 6 Conn.

Other jurisdictions have held that a disclaimer contained in materials which are provided to the purchaser subsequent to the sale cannot relieve the manufacturer of the implied warranty of merchantability. In *Dougall v. Brown Bay Boat Works & Sales, Inc.,* 287 Minn. 290, 178 N.W.2d 217 (1970), an owner's manual which contained the disclaimer was given to the purchaser after the sales transaction was completed but before the motorboat was delivered. The court concluded:

"We are not persuaded here that the warranty found on the back cover of the Evinrude brochure played any part in the transaction giving rise to the sale. There is no evidence that the warranty was delivered to plaintiff at the time of the sale or that he was told that the sale was subject to warranties contained in the manual of instructions. Since disclaimer of the warranty is in the nature of an affirmative defense, it would seem that defendant had the obligation to establish that it was delivered at the time of sale and constituted an integral part of the transaction. . . ." *Id.* at 222, 223.

Arkansas has taken a similar position with regard to manufacturer's disclaimers first given to the purchaser at the time the product is delivered. *International Harvester Co. v. Pike,* 249 Ark. 1026, 466 S.W.2d 901 (1971) ; *Mack Trucks of Ark., Inc. v. Jet Asphalt & Rock Co.,* 246 Ark. 101, 437 S.W.2d 459 (1969) ; *Marion Power Shovel Co. v. Huntsman,* 246 Ark. 152, 437 S.W.2d 784 (1969).

In Florida it has been held that since the manufacturer is not the seller it cannot disclaim implied warranties pursuant to the U.C.C. and subsequent to the contract of sale. *Rehurek v. Chrysler Credit Corporation,* 262 So.2d 452 (Fla. App. 1972) ; *Ford Motor Company v. Pittman,* 227 So.2d 246 (Fla. App. 1969).

Cir. 478, 276 Atl.2d 807 (1970) ; *Tiger Motor Company, Inc. v. McMurtry,* 284 Ala. 283, 224 So.2d 638 (1969) ; *Ford Motor Co. v. Taylor,* 446 S.W.2d 521 (Tenn. Ct. App. 1969) ; *Zabriskie, supra.*

Wisconsin has not addressed this precise issue. In *Calumet Cheese Co. v. Chas. Pfizer & Co.*, 25 Wis.2d 55, 130 N.W.2d 290 (1964), the court held the seller's disclaimer ineffective because it was inconspicuous, but noted that it would also be ineffective because it was first mentioned on an invoice which was sent to the buyer after the contract was made. *Id.* at 62, 63. This is the position taken in a number of jurisdictions.[2] We find it persuasive.

One of the purposes for the disclaimer requirement is to protect the buyer from unexpected and unbargained language. Sec. 402.316, Stats., official U.C.C. Comment. This purpose would be defeated if a manufacturer could disclaim implied warranties after the contract for sale has been entered into and at a time when the automobile is delivered. Ford attempts to counter this argument by saying it is undisputed that the sales contract contained a disclaimer. However, the contract is not part of the record and is not referred to elsewhere in the record. Therefore it cannot be determined whether the disclaimer in the sales contract meets the requirement of sec. 402.316(2). On the basis of this record we must conclude that the only disclaimer was in the warranty booklet. This disclaimer was ineffective because it was made subsequent to the sale. However, even if this implied warranty did survive, as the trial court seems to have concluded, the auto was in fact merchantable, so any implied warranty was not breached. Ford is entitled to summary judgment on this issue.

[2] *See, e.g., Cherokee Investment Co. v. Voiles*, 443 Pac.2d 727 (Colo. 1968) ; *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.*, 68 Ill. App.2d 297, 216 N.E.2d 282 (1965) ; *Turner v. Kunde*, 256 Iowa 835, 128 N.W.2d 196 (1964) ; *Sensabaugh v. Morgan Brothers Farm Supply, Inc.*, 223 Md. 593, 165 Atl.2d 914 (Md. App. 1960).

Taterka also argues that the 12 months/12,000 mile limit on the express warranty is unreasonable when applied to a latent defect.

Sec. 402.607 (3) (a), Stats., requires a buyer who discovers a breach to notify the seller within a reasonable time. Sec. 401.204, allows the seller to fix any time which is not manifestly unreasonable. Neither party cites any authority, and our research disclosed none, which approve or disapprove of this standard limit on automobile warranties.[3]

Cases in which time limits have been held manifestly unreasonable have generally involved very short notice periods. *See, e.g., Neville Chemical Co. v. Union Carbide Corp.*, 294 Fed. Supp. 649, *aff'd* 422 Fed.2d 1205 (3rd Cir. 1970), *cert. den.* 400 U.S. 826, 15 days; *Wilson Trading Corp. v. David Ferguson, Ltd.*, 23 N.Y.2d 398, 244 N.E.2d 685 (1968), 10 days; *Torrance v. Durisol, Inc.*, 20 Conn. Sup. 62, 122 Atl.2d 589 (1956), 10 days; *Kansas City Wholesale Grocery Co. v. Weber Packing Corp.*, 93 Utah 414, 73 Pac.2d 1272 (1937), 10 days. In *Majors v. Kalo Laboratories, Inc.*, 407 Fed. Supp. 20 (M.D. Ala. 1975), a 120 day limit was held void as to a latent defect which was known to the manufacturer.

Each of these cases is distinguishable from the present case. In each of them the defect was such that it rendered the product substantially useless to the purchaser shortly after it was purchased.

In the case before us the warranty is clear. Ford's warranty does not cover all manufacturing defects. It only covers those discoverable within 12 months or 12,000 miles. The buyer is to bear the risk of repairs beyond that point. Furthermore, and of particular im-

---

[3] *See: Anno.* 99 A.L.R.2d 1419, sec. 5, at 1435 (1965), for citation of cases in which a 90-day new car express warranty has been approved.

portance in this case, the car was a long way from being totally worthless to Taterka. He drove it for 90,000 miles. The kind of defect necessary to find a time limit manifestly unreasonable under sec. 401.204 (1), Stats., or unconscionable under sec. 402.302, does not exist here. Ford is also entitled to summary judgment on this issue.

*By the Court.*—Judgment affirmed.