Douglas A. RESCH, Plaintiff,

v.

GREENLEE BROS. & CO., a Delaware
corporation, Firemen's Fund Ins. Co., a foreign
corporation, and the Aetna Casualty & Surety
Co., a foreign corporation, Defendants,

FOURWAY MACHINERY SALES CO., a
foreign corporation, Defendant and Third-Party
Plaintiff-Appellant,

Donald R. FRANTZ, d/b/a Frantz Machine
Products and Frantz Machine Products, Inc.,
Third-Party Defendants-Respondents.

Court of Appeals

*No. 84–2065. Submitted on briefs August 7, 1985.—Decided
December 18, 1985.*
(Also reported in 381 N.W.2d 590.)

For the defendant and third-party plaintiff-appellant, briefs were filed by *Terrence C. Thom and Linda E. B. Hansen* of *Prosser, Wiedabach & Quale, S.C.* of Milwaukee.

For the third-party defendants-respondents, briefs were filed by *Daniel L. Smart and Christopher T. Kolb* of *Kingston and Smart* of Mukwonago.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. Fourway Machinery Sales Company appeals from a judgment dismissing its third-party complaint against Donald R. Frantz, d/b/a Frantz Machine Products and Frantz Machine Products, Inc. The major issue in this lawsuit is whether an invoice, sent by Fourway after delivery of a machine, is part of the contract and, if so, whether the indemnification provision of the invoice is binding on Frantz. We conclude that even if the invoice can be said to be part of the contract, the indemnification language of the invoice is a material alteration of the parties' contract under sec. 402.207(2)(b), Stats., and is therefore not enforceable. We affirm.

This lawsuit arises from the sale of a used automatic screw machine to Frantz by Fourway. The following facts are relevant and not disputed: In late January or early February 1980, Donald Frantz visited the Fourway facilities in Michigan to discuss the possible purchase of the machine. Frantz had seen an advertisement for the machine in a trade magazine. Frantz and Fourway representatives discussed the price, terms of payment and the "as is" nature of the sale. Both parties

238

understood that the machine could be returned to Fourway within thirty days for any reason. Risk allocation for injuries caused by the machine was not discussed.

After his return to Wisconsin, Frantz wired the purchase price to Fourway and the machine was delivered on either February 5 or 6, 1980. An invoice was either shipped with the machine or arrived shortly thereafter. The invoice contained a lengthy indemnification clause providing that the buyer agrees to hold the seller harmless for damages or claims arising from the use of the machine. Frantz did not return the machine or object to the invoice terms.

Six weeks later, a Frantz employee was injured while using the machine. The employee brought a products liability action against Fourway and the machine's manufacturer. Fourway impleaded Frantz on the basis of the invoice's indemnification language. The trial court granted Frantz's motion for summary judgment, holding that the parties' contract was completed prior to delivery of the invoice so that its terms were not binding on the parties. Alternatively, the trial court held that even if the invoice were part of the contract under sec. 402.207(1), Stats., the indemnification language was a material alteration of the contract so that the provision was not binding on the parties under sec. 402.207(2)(b).

The granting of a summary judgment is a question of law which we review *ab initio. Waters v. United States Fidelity & Guaranty Co.,* 124 Wis.2d 275, 278, 369 N.W.2d 755, 757 (Ct. App. 1985). Upon review of a summary judgment, this court applies the same methodology under sec. 802.08(2), Stats., as does the trial court. *Id.* Assuming a factual issue is created by

the pleadings, this court examines the moving parties' affidavits to determine whether a *prima facie* case for summary judgment has been made. *Preloznik v. City of Madison,* 113, Wis.2d 112, 116, 334 N.W.2d 580, 583 (Ct. App. 1983). A moving defendant must show a defense which would defeat the claim. *Id.* If a *prima facie* case is shown, the court examines the affidavits submitted by the opposing party to determine whether a genuine issue exists as to any material fact. *Id.* If so, summary judgment is improper. *See id.* An examination of the pertinent documents reveals no material issue of fact and presents only a legal issue. We first address the legal issue of whether the contract was complete prior to issuance of the invoice.

The trial court relied on two prior Wisconsin cases in finding that the parties' contract was complete prior to delivery of the invoice. In *Calumet Cheese Co. v. Chas. Pfizer & Co.,* 25 Wis.2d 55, 130 N.W.2d 290 (1964), the parties entered into a sales contract through telephone communications. The subsequent invoices and order acknowledgements contained liability disclaimers.[1] The court stated that "the disclaimer as a part of the invoice was transmitted only after the contract was made and hence was in any event ineffective in imposing additional obligations upon the purchaser."[2] *Id.* at 62–63, 130 N.W.2d at 294. In *Taterka v. Ford Motor Co.,* 86 Wis.2d 140, 271 N.W.2d 653 (1978), the effectiveness of disclaimers contained in an owner's manual given

---

[1] It is not clear from the opinion if the invoice was shipped with the goods or received after delivery.

[2] The disclaimers in *Calumet Cheese* were held ineffective because they were illegible. *Id.* at 62, 130 N.W.2d at 293–94. The court's comments regarding contract formation were, therefore, an alternative holding.

the purchaser at the time of delivery was at issue. *Id.* at 147, 271 N.W.2d at 655–56. The court, citing cases from other jurisdictions and approving the *Calumet Cheese* language discussed above, held that any disclaimers in the manual were ineffective because they were made subsequent to the execution of the sales contract. *Id.* at 147–49, 271 N.W.2d at 656–57.

It is undisputed that the invoice was either shipped with the machine or received by Frantz after delivery. It is not argued that the invoice preceded delivery. The purchase price had been paid and the machine shipped. The trial court reasoned that under the rationale of *Calumet Cheese* and *Taterka,* an invoice accompanying delivery would be subsequent to the execution of the contract. Therefore, the trial court concluded that the indemnification language would not be binding on the parties.

Fourway attacks the trial court's reliance upon *Calumet Cheese* and *Taterka* by pointing out that the Uniform Commercial Code had not been adopted in Wisconsin before *Calumet Cheese* was decided and that *Taterka* did not involve a purchaser who was a merchant.[3]

---

[3] Frantz, in defense of the Uniform Commercial Code claim by Fourway, argues that it was not a merchant within the terms of the UCC. The trial court ruled that a material issue of fact existed as to whether Frantz was a "merchant" so that the indemnification language would be enforceable under sec. 402.207, Stats. Upon our review of the factual assertions of the parties' affidavits and the meaning of "merchant" and "between merchants" under the Uniform Commercial Code, we conclude that no material factual issue exists.

Section 402.207(2), Stats., states that where additional terms contained in a written confirmation are construed as proposals for ad-

Fourway concludes that the Uniform Commercial Code applies to this case and requires a different result than that obtained in *Calumet Cheese* and *Taterka*. It argues that where a commercial transaction was not an offer but was in fact an oral contract, a later writing will be regarded as a confirmation and the UCC, particularly § 2–207(2), will be applied to determine the effect of any additional term. *See* R. Anderson, *Uniform Commercial Code* § 2–207:27 (3d ed. 1982).

---

dition to a contract and "between merchants" the terms will become part of the contract except under certain conditions. A transaction is "between merchants" when "both parties are chargeable with the knowledge or skill of merchants." Sec. 402.104(1), Stats. Section 402.104(3) defines a merchant as:

a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

The trial court determined that a factual issue existed as to whether Frantz could be considered a merchant in the used machinery business as opposed to the new machinery business. However, for purposes of determining whether sec. 402.207, Stats., should be applied to this transaction, that distinction is not material. Those sections of the Uniform Commercial Code regarding merchants which rest on normal business practices which are or ought to be typical of and familiar to any question in business, such as sec. 402.207 concerning contract modification, should be read broadly. *County of Milwaukee v. Northrop Data Systems, Inc.,* 602 F.2d 767, 771 (7th Cir. 1979); *see* Official UCC Comment 2, Wis. Stat. Ann. § 402.104 (West 1964). The principles of contract formation do not differ between the new and used machinery businesses.

Fourway argues that the language of sec. 402.207, Stats., provides a basis for support of its position. Section 402.207, in part, says:

(1)  A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

Since the challenged indemnification language appeared on the invoice which was either shipped with the machine or sent to Frantz shortly thereafter, Fourway concludes that the invoice was a written confirmation which was sent within reasonable time. As such, Frantz had the burden of objecting to its contents within a reasonable time. *See* sec. 402.207(2)(c) , Stats.

*Calumet Cheese* and *Taterka* may not be controlling with regard to whether sec. 402.207, Stats., applies in this case. Whether an invoice should be considered an expression of acceptance or written confirmation within the terms of the Uniform Commercial Code was not addressed in those cases and remains unanswered.[4]

We need not decide this precise issue, however, because even if an invoice *can* be a "written confirmation," such writing may not materially alter the contract. *See* sec. 402.207(2)(b), Stats. If it does, it is not

---

[4] We observe, however, that it is ambiguous from the wording of the Code whether the modification rule of sec. 402.207, Stats., applies when an invoice is received after the goods have already been received. *Trust Company Bank v. Barrett Distributors, Inc.,* 459 F. Supp. 959, 961 (S.D. 1978). The official comment to this section appears to imply that the section has no application after the goods are received, but this too is not clear. *Id.*

part of the contract unless there is an express agreement concerning its inclusion. *See Air Products & Chemicals, Inc. v. Fairbanks Morse, Inc.,* 58 Wis.2d 193, 213, 206 N.W.2d 414, 424 (1973); *see also* Official UCC Comment 3, Wis. Stat. Ann. § 402.207 (West 1964).

The language in question, if effective, would shift to Frantz all liability for any claims arising from operation of the machine. As this lawsuit demonstrates, the potential monetary effect of such a shift is significant. As was held in *Air Products,* 58 Wis.2d at 214, 206 N.W.2d at 425:

[T]here is no good reason to hold that a disclaimer that has the effect of eliminating millions of dollars in damages should become a part of a contract by operation of law. . . . [T]he disclaimer for consequential loss was sufficiently material to require express conversation between the parties over its inclusion or exclusion in the contract.

Although *Air Products* dealt with a disclaimer, its rationale is persuasive. We hold as a matter of law that the indemnification provision in this case is also a material alteration under sec. 402.207(2)(b), Stats. Our research reveals that although the Code does not define when an added term is material within the scope of UCC § 2–207, other courts have concluded that such questions can be answered, in some cases, as a matter of law.[5]

---

[5] *See, e.g., Flight Systems, Inc. v. Elgood-Mayo Corp.,* 660 P.2d 909 (Colo. Ct. App. 1982); *Clifford-Jacobs Forging Co. v. Capital Engineering & Mfg. Co.,* 437 N.E.2d 22 (Ill. App. Ct. 1982); *General Instrument Corp. v. Tie Manufacturing, Inc.,* 517 F. Supp. 1231 (S.D.N.Y. 1981); *Coastal Industries, Inc. v. Automatic Steam Products Corp.,* 654 F.2d 375 (5th Cir. 1981); *Album Graphics, Inc. v. Be-*

The official comment to § 2–207 of the Code notes that:

[e]xamples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches; . . . a clause requiring that complaints be made in a time materially shorter than customary or reasonable.

Official UCC Comment 4, Wis. Stat. Ann. § 402.207 (West 1964). The official comment teaches that where exposure is great, such exposure should not become part of a contract by operation of law. There should be an express agreement between the parties concerning its inclusion or exclusion. In this case, Frantz did not expressly assent to its inclusion. Therefore, the indemnification provision is not binding on Frantz. Summary judgment was properly granted.

*By the Court.*—Judgment affirmed.

---

*atrice Foods Co.,* 408 N.E.2d 1041 (Ill. App. Ct. 1980); *Johnson Tire Service, Inc. v. Thorn, Inc.,* 613 P.2d 521 (Utah 1980).